# United States Court of Appeals
## For the First Circuit

No. 14-1832

UNITED STATES LIABILITY INSURANCE COMPANY,

Plaintiff, Appellee,

v.

BENCHMARK CONSTRUCTION SERVICES, INC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Barron, Circuit Judge,
Souter,[*] Associate Justice,
and Lipez, Circuit Judge.

Michael P. Sams, with whom Ryan P. Menard and Kenney & Sams, P.C. were on brief, for appellant.
John B. DiSciullo, with whom Mitchell & DeSimone was on brief, for appellee.

August 12, 2015

[*]Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**LIPEZ, Circuit Judge**.   In this declaratory judgment action, Benchmark Construction Services, Inc. ("Benchmark") and its insurer, United States Liability Insurance Company ("USLIC"), debate the scope of an employer's liability exclusion in a dispute over the insurer's duty to defend and indemnify Benchmark in an underlying personal injury lawsuit.   Ruling on cross motions for summary judgment, the district court concluded that USLIC had no duty to defend or indemnify Benchmark in the personal injury lawsuit.   Given ambiguities in the exclusion, which must be construed in the insured's favor, we reverse.

## I.

In July 2009, homeowners Tom and Sue Ghezzi hired general contractor Benchmark to renovate their Newton, Massachusetts home. The homeowners had hired architect Thomas Huth to design the renovation plans.   Huth, in turn, hired Sara Egan d/b/a Painted Design to apply decorative painting to one of the interior walls, and Egan set her employee, Meghan Bailey, to the task. Uncontestedly, Benchmark had no contractual relationship with Huth, Egan, or Bailey; neither was Bailey's work performed under a contract with any of Benchmark's contractors or subcontractors.   On March 5, 2010, while Bailey was applying the decorative paint, she fell from a ladder that was positioned on top of scaffolding.

Bailey sued Benchmark in the Massachusetts Superior Court, alleging that she was injured in the fall, that Benchmark

-2-

owed her a duty of care, and that Benchmark negligently erected and maintained the ladder and scaffolding.[1]  Benchmark sought a defense from its insurer, USLIC, but USLIC determined that Bailey's claims are not covered under Benchmark's insurance policy and, hence, that USLIC has no duty to defend or indemnify Benchmark against those claims.  According to USLIC, an endorsement to the policy excludes Bailey's injuries from coverage.

At the time of the accident, Benchmark was insured under USLIC's Commercial General Liability Coverage policy.  The policy confers broad coverage for "bodily injury" and "property damage," as well as for "personal and advertising injury" and medical expenses.  These coverages are then refined through numerous exclusions.  Twenty-five endorsements are appended to the policy, many of which provide additional exclusions or alter the contours of existing exclusions.  One of these endorsements, "Bodily Injury Exclusion – All Employees, Volunteer Workers, Temporary Workers, Casual Laborers, Contractors, and Subcontractors" (the "L-500 Endorsement"), entirely replaces the "Employer's Liability" exclusion from the original policy and is at the heart of this appeal.  As modified by the L-500 Endorsement, the insurance does not apply to:

---

[1] The parties contest whether Benchmark or Egan was responsible for the scaffolding, but that dispute is immaterial to the present appeal.

-3-

[(I)(2)(e)](2) "Bodily injury" to any contractor, subcontractor or any "employee", "volunteer worker", "temporary worker" or "casual laborer" of any contractor or subcontractor arising out of or in the course of rendering or performing services of any kind or nature whatsoever by such contractor, subcontractor or "employee", "volunteer worker", "temporary worker" or "casual laborer" of such contractor or subcontractor for which any insured may become liable in any capacity[.]

Stripped of language not relevant here, this provision excludes:

"Bodily injury" to any . . . "employee" . . . of any contractor . . . arising out of . . . rendering services of any kind . . . for which any insured may become liable in any capacity[.]

"Contractor" is not a defined term under the policy.[2] The policy provides that USLIC has a duty to defend Benchmark against suits seeking damages "because of 'bodily injury' . . . to which this insurance applies."

On June 27, 2013, USLIC filed a declaratory judgment action in the Massachusetts district court to establish that the insurance policy does not provide coverage for Bailey's claims, and that USLIC consequently has no duty to defend or indemnify Benchmark against those claims. Benchmark counterclaimed for a declaratory judgment establishing that Bailey's claims are, indeed, covered under the policy and that USLIC has a duty to defend and

_____

[2] The parties do not dispute that Bailey was Egan's "employee" or that Bailey's alleged injuries would satisfy the policy's definition of "bodily injury".

-4-

indemnify its insured, Benchmark, in the underlying personal injury action. The parties submitted cross motions for summary judgment.

On July 8, 2014, the district court entered judgment for USLIC. The court held that the policy excludes Bailey's claims because the L-500 Endorsement excludes injuries to contractors' employees who are injured while performing services. Although the insurance policy does not provide a definition of "contractor," the court held that "contractor" unambiguously means "anyone with a contract." Since Bailey's boss, Egan, had contracted to do the decorative painting, Bailey was a contractor's employee and her claims are subject to the exclusion. Benchmark appealed.

## II.

We review the district court's disposition on cross motions for summary judgment de novo. OneBeacon Am. Ins. Co. v. Commercial Union Assurance Co. of Can., 684 F.3d 237, 241 (1st Cir. 2012). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Under Massachusetts law,[3] "[t]he proper interpretation of an insurance policy is a matter of law to be decided by a court, not a jury." Boazova v. Safety Ins. Co., 968 N.E.2d 385, 390 (Mass. 2012). As with any contract, the court "must construe the

_____

[3] Massachusetts law applies because this is a diversity action. B & T Masonry Constr. Co., Inc. v. Pub. Serv. Mut. Ins. Co., 382 F.3d 36, 38 (1st Cir. 2004).

words of the policy in their usual and ordinary sense." Bos. Gas Co. v. Century Indem. Co., 910 N.E.2d 290, 304 (Mass. 2009) (internal quotation marks omitted). If a term is "susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one," the term is ambiguous. Citation Ins. Co. v. Gomez, 688 N.E.2d 951, 953 (Mass. 1998). Ambiguities are to be construed against the insurer and in favor of the insured. Boazova, 968 N.E.2d at 390. "This rule of construction applies with particular force to exclusionary provisions." Id. (quoting Hakim v. Mass. Insurers' Insolvency Fund, 675 N.E.2d 1161, 1165 (Mass. 1997)). However, an ambiguity does not exist simply because the parties disagree about how to interpret the policy. Id.

When there is doubt over the meaning of a term, it is "appropriate 'to consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.'" Trs. of Tufts Univ. v. Commercial Union Ins. Co., 616 N.E.2d 68, 72 (Mass. 1993) (quoting Hazen Paper Co. v. U.S. Fid. & Guar. Co., 555 N.E.2d 576, 583 (Mass. 1990)); see also Bos. Gas Co., 910 N.E.2d at 305. But an insured can have no reasonable expectation of coverage if the unambiguous terms of the policy preclude coverage. Clark Sch. for Creative Learning v. Phila. Indem. Ins. Co., 734 F.3d 51, 57 (1st Cir. 2013) (applying Massachusetts law).

The L-500 Endorsement excludes claims for work-related bodily injury to contractors, subcontractors, and their various workers and employees. The district court based its decision on the scope of the word "contractor," which it held unambiguously means "anyone with a contract." Thus, the court held, since Bailey was a decorative artist working for Egan, who had a contract with the architect, she was the employee of a "contractor" and the exclusion applies to her claims.

We conclude that the undefined term, "contractor," is ambiguous. We also conclude that there is an additional ambiguity in the exclusion at issue not addressed by the district court: whether the phrase "for which any insured may become liable" refers to "services" or "bodily injury." Resolving these ambiguities in favor of Benchmark removes the uncertainty about the scope of the L-500 Endorsement exclusion and brings Bailey's claims squarely within the coverage of the policy.

## A. Ambiguous Antecedent

We begin with the ambiguity in the L-500 Endorsement that the district court did not consider. Here, we focus not on the meaning of the word "contractor" in the Endorsement, but rather on the proper reading of a phrase: "'[b]odily injury' to any . . . 'employee' . . . of any contractor . . . arising out of . . . rendering services of any kind . . . <u>for which any insured may become liable[.]</u>" (Emphasis added.) The parties disagree about

the proper antecedent of the phrase "for which any insured may become liable" -- that is, whether it modifies "services" or "bodily injury."

According to Benchmark, "[t]he phrase 'for which any insured may become liable . . .' modifies the clause 'services of any kind . . . ,' [indicating] that the policy excludes [the] claims [of a contractor's employee] only if the contractor's employee is injured while performing services for which the insured has some responsibility." USLIC, on the other hand, contends that the exclusion uses deliberately broad language to reflect "that an insured might become liable to a worker on a job site with whom [the insured] has no contractual relationship." Under that interpretation, the phrase "for which any insured may become liable" modifies "bodily injury," not "services."

Construing the provision as Benchmark suggests limits the exclusion to bodily injury that befalls employees of "contractors [Benchmark] hires or has some contractual responsibility to." Such a limitation, Benchmark asserts, is consistent with Massachusetts common law, which limits a general contractor's particular duty to a subcontractor's employee according to whether the former "retains the right to control the work in any of its aspects, including the right to initiate and maintain safety measures and programs." Kostrzewa v. Suffolk Constr. Co., 897 N.E.2d 1272, 1274 (Mass. App.

Ct. 2008) (quoting Corsetti v. Stone Co., 483 N.E.2d 793, 798 (Mass. 1985)).

Benchmark therefore contends that USLIC's duty to defend and indemnify its insured turns on whether Benchmark retained the right to exert any control over Bailey's decorative painting "services" and could therefore be accountable for liabilities arising from or related to her work.[4] Here, "[t]he undisputed facts show that Benchmark did not hire Bailey's employer, nor was Bailey otherwise somehow performing work within Benchmark's general contract." Hence, even if Bailey was a contractor's employee, as the district court held she was, the exclusion does not apply to Bailey's claims because Benchmark could not become liable for her services.

In contrast, USLIC maintains that the exclusion applies to bodily injury befalling any contractor, subcontractor, or employee of a contractor or subcontractor injured on the job if Benchmark may become liable for that injury. Reading the policy in this way means that the relationship of the injured party to the insured is simply inapposite. The irrelevancy of a contractual relationship between the injured party and the insured is underscored, USLIC argues, by the use of the word "any" in the

---

[4] Liability for Bailey's "services" would include vicarious liability for any torts she might commit in the course of her employment, and liability to the homeowners for deficiencies in the quality of her work.

exclusion: as in, the policy excludes bodily injury to "any" employee of "any" contractor arising out of rendering services of "any" kind.  To wit, USLIC asserts that the Endorsement "applies with respect to 'any' contractor, not just [Benchmark's] subcontractors."

To determine coverage under the L-500 Endorsement, then, the relevant inquiry is limited to whether the injured party is a contractor, subcontractor, or works for a contractor or subcontractor, whether the injury "ar[ose] out of or in the course of rendering or performing services," and whether Benchmark may become liable for that injury.  Here, USLIC contends that, although Bailey did not have a contractual relationship with Benchmark, the exclusion applies because she was employed by a contractor, she was injured on the job, and Benchmark's alleged negligence in maintaining the site may expose Benchmark to liability for her injuries.

We are persuaded by these competing arguments that reasonably intelligent people could differ as to the proper antecedent of "for which the insured may become liable."  The exclusion is therefore ambiguous.  Under Massachusetts law, Benchmark is entitled to have the ambiguity resolved in its favor, particularly where the ambiguity appears in an exclusion.  See Boazova, 968 N.E.2d at 390.  We therefore adopt the interpretation of the exclusion that Benchmark advances: the exclusion applies

-10-

only if the insured may become liable for the injured party's services.  Since Benchmark could not have been liable for Bailey's decorative painting, the exclusion does not apply to Bailey's claims and USLIC has a duty to defend and indemnify Benchmark in the underlying personal injury suit.

The reasonable expectations of the insured support this outcome.  The purpose of a commercial general liability insurance policy, like the one Benchmark purchased from USLIC, is "to protect the insured against losses to third parties arising out of the operation of the insured's business."  9A Steven Plitt et al., Couch on Ins. § 129:2 (3d ed. 2014).  The relationship of the injured party to the insured is at the core of this type of "broad coverage."  See id. at § 129:1 (explaining that commercial general liability insurance is "designed to provide coverage for tort liability for physical damages to others" (emphasis added)); see also id. at § 129:10 (describing commercial general liability insurance as "providing coverage for the employer's liability to the general public for the negligence of the employer's agents . . . and employees").  The distinction between an insured's employees on the one hand and the public on the other is typically maintained through two employment-related exclusions, the workers' compensation exclusion and the employer's liability exclusion. See id. at §§ 129:10-11.

Here, the standard employer's liability exclusion from the original policy has been replaced with the L-500 Endorsement, although the parties dispute whether the Endorsement deleted the exclusion heading, "Employer's Liability." Benchmark contends that the heading was retained, thus providing a lens through which to interpret the Endorsement's substantive provisions. At the very least, Benchmark argues, it is reasonable to read the Endorsement as a modification of the "Employer's Liability" exclusion "rather than [as] a whole new set of unrelated exclusions." We conclude that whether the heading persists is immaterial because, in light of the content of the Endorsement, it is reasonable to read the Endorsement as an employer's liability exclusion, even if the heading was deleted. In other words, the Endorsement may reasonably be read as an employer's liability exclusion that has been modified by the insurer to reflect a particular type of employer, namely, a contractor.

In its first provision, the Endorsement simply adds a handful of worker classifications to the "employee" classification used in the original policy's "Employer's Liability" exclusion. The provision in the original policy excluded "Bodily injury to: (1) An employee of the insured," whereas the Endorsement excludes "Bodily injury to any employee, volunteer worker, temporary worker, or casual laborer arising out of . . . [e]mployment by any Insured[.]" Compare Add. 50 with Add. 51 (internal quotation marks

-12-

omitted). The added classifications reflect the different types of workers that a contractor like Benchmark might engage, but they do not upset the basic objective of the exclusion: to exclude injuries to individuals who work directly for Benchmark.

The second provision in the L-500 Endorsement is the one at issue: exclusion of "bodily injury to any contractor, subcontractor or any employee, volunteer worker, temporary worker, or casual laborer of any contractor or subcontractor arising out of . . . rendering services . . . for which any insured may become liable[.]" This provision does not have a direct counterpart in the original "Employer's Liability" exclusion but, read in context, it is reasonably interpreted as an extension of the Endorsement's first provision. Here, the Endorsement responds to a situation, common in Benchmark's line of work, in which there may be several layers of subcontractors between any given worker and the general contractor. By expanding the exclusion to "any contractor, subcontractor or any employee, volunteer worker, temporary worker, or casual laborer of any contractor or subcontractor," the Endorsement builds upon the first provision so that the exclusion encompasses not only those who work directly for Benchmark, but also those who work for subcontractors of Benchmark. This is nothing more than an adaptation of the "Employer's Liability" exclusion to the particular circumstances that commonly arise when

-13-

the insured is a general contractor who frequently contracts with subcontractors.

Given that the purpose of the policy is to indemnify Benchmark against third-party liability and that the Endorsement may reasonably be read as an employer's liability exclusion, it would be incongruous to exclude Bailey's claims on the basis of the Endorsement. Bailey neither worked directly for Benchmark, nor was Benchmark anywhere in her chain of employment. Dividing the world into those who work for the insured and the general public, Bailey is squarely in the latter camp. Hence, her claims are of the sort that Benchmark could reasonably expect to be covered under the policy.

## B. Ambiguous Scope of "Contractor"

We also conclude that there is a second ambiguity in the policy language: the definition of the word "contractor." The L-500 Endorsement exclusion applies only to contractors, subcontractors, and their various workers and employees. Benchmark contends that the exclusion does not apply to Bailey's claims because Bailey was not a contractor's employee within the meaning of the exclusion when she was injured. "Contractor" is not a defined term in the policy. If an undefined term is susceptible to multiple reasonable definitions, then the court will apply a reasonable definition that confers coverage, if one exists. See Littlefield v. Acadia Ins. Co., 392 F.3d 1, 8 (1st Cir. 2004)

-14-

(requiring that a policy provision "susceptible to more than one reasonable interpretation" be construed against the insurer); Hazen, 555 N.E.2d at 583 (same).

Looking to the dictionary, the district court held – and USLIC contends on appeal – that "contractor" unambiguously means "anyone with a contract."  See U.S. Liab. Ins. Co. v. Benchmark Constr. Servs., Inc., 31 F. Supp. 3d 315, 320 (D. Mass. 2014) (citing Webster's New World College Dictionary (4th ed. 1999) for a definition of "contractor" as "a person who contracts to supply certain materials or do certain work for a stipulated sum, esp. one who does so in any of the building trades").  USLIC argues that, since Egan had a contract to apply decorative paint to the interior wall, Egan was a contractor under this broad definition.  Bailey, as Egan's employee, was therefore a contractor's employee, bringing her claims under the L-500 Endorsement's purview.[5]

Benchmark, however, contends that "contractor" means someone with a contract with the insured.  In other words, "contractor" means someone Benchmark hires but who is not

_____

[5] Benchmark argues that defining "contractor" as "anyone with a contract" is unreasonable because it renders the other classes of excluded parties listed in the L-500 Endorsement superfluous.  After all, subcontractors, as well as the employees of contractors and subcontractors, are all parties "with a contract," no less than "contractors" are.  However, the interpretive canon that urges us to avoid surplusage in contracts is limited in its application to insurance policies, where "redundancies abound."  Ardente v. Standard Fire Ins. Co., 744 F.3d 815, 819 (1st Cir 2014) (quoting TMW Enters., Inc. v. Fed. Ins. Co., 619 F.3d 574, 577 (6th Cir. 2010)).

-15-

Benchmark's "employee."  The reasonableness of that interpretation,

Benchmark argues, is evident from the structure of the exclusion.

Since the first part of the exclusion is confined to Benchmark's

"employees" and other workers that Benchmark hires, the second part

of the exclusion, which speaks of contractors, subcontractors, and

their workers, would logically be confined to contractors and

subcontractors Benchmark retains for work on a project and their

workers.

We are persuaded that reasonably intelligent people may

differ about the meaning of the word "contractor," and hence the

word is ambiguous.[6]   "Anyone with a contract" is surely a

reasonable definition of the word "contractor," as the district

court found, but so is a more narrow definition focused on the

contractual relationship of the injured party and the insured.

In light of the ambiguity, we may once again look to the

reasonable expectations of the insured to discern the proper

meaning of the undefined term.  See Trs. of Tufts Univ., 616 N.E.2d

at 72.  Here, the reasonable expectations of the insured support

---

[6] Since "contractor" is ambiguous, USLIC's argument that Benchmark's interpretation rewrites the policy is misguided.  Of course, the court will not rewrite the unambiguous terms of an insurance contract.  Lexington Ins. Co. v. Gen. Accident Ins. Co. of Am., 338 F.3d 42, 50 (1st Cir. 2003); see also Hakim v. Mass. Insurers' Insolvency Fund, 675 N.E.2d 1161, 1165 (Mass. 1997) ("We read the policy as written and are not free to revise it or change the order of the words." (internal quotation marks omitted)).  Here, however, the ambiguity requires us to consider the full breadth of reasonable alternative definitions that the parties propose.

the definition Benchmark advances. As Benchmark argues, defining "contractor" as "anyone with a contract" "makes a dice roll of every bodily injury claim, based on whether the injured party happened to be working under any contract no matter how attenuated to the insured's work." Although the district court felt constrained to adopt the broader definition of "contractor," it nevertheless conceded the folly of such a haphazard approach to insurance:

> [T]he Court can discern no reason why the parties would choose ex ante to have coverage depend on whether an injured party was performing subject to a contract at the time he or she was injured regardless of whether that contract was with the insured or some other entity and regardless of whether the contract was related to the subject matter of the Policy.

Benchmark, 31 F. Supp. 3d at 321. We are similarly unable to discern any reason why the parties would have contracted for coverage to depend on the coincidence of an injured party's contractual obligations in the world at large.

The purpose of commercial general liability insurance also supports the narrower definition of "contractor." As discussed in the previous section, this type of policy provides coverage for liability arising out of torts to third parties, as distinguishable from injuries that befall the insured's own employees. Since the word "contractor" is being used in a provision we have described as an employer's liability exclusion,

it makes sense to define "contractor" as someone with a contract with the insured. A reasonable insured would expect the contractual relationship between the insured and the injured party to govern the applicability of an employer's liability exclusion to a given injury.[7]

"Contractor," then, does not mean "anyone with a contract," but is more narrowly defined and means "Benchmark's contractor." Therefore, the L-500 Endorsement exclusion does not apply to Bailey's claims. Bailey's boss, Egan, was not retained by Benchmark, and so Bailey is not a contractor's employee within the meaning of the exclusion.

### III.

Construing ambiguities against the insurer, Bailey's claims against Benchmark are not excluded by the L-500 Endorsement. Instead, those claims fall within the bounds of insurance coverage. Hence, USLIC has a duty to defend and indemnify Benchmark in the underlying negligence suit.

---

[7] Benchmark alternatively argues that "contractor" is limited to someone in the "building trades," and that the term "building trades" reasonably excludes artists like Egan and Bailey. The reasonableness of that approach collapses when one considers that the exclusion at issue is an employer's liability exclusion. Although Benchmark did not hire Egan, there is nothing about Benchmark's position as a general contractor that would have precluded it from doing so. Landscape architects, gardeners, artists, and other decorators might not work in the "building trades," but Benchmark might well enter a contractual relationship with them as part of its work as a general contractor. A reasonable insured would expect the claims of such a worker to fall within the scope of the Employer's Liability exclusion.

Reversed and remanded for entry of judgment consistent with this opinion.