Filed 5/17/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CALIFORNIA SPECIALTY INSULATION, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ALLIED WORLD SURPLUS LINES INSURANCE COMPANY, <br><br> Defendant and Appellant. | B324805 <br><br> (Los Angeles County Super. Ct. No. 21STCV06969) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michelle Williams Court, Judge. Affirmed.

Horvitz & Levy, Andrea L. Russi, Mitchell C. Tilner, Karen M. Bray; Selman Leichenger Edson Hsu Newman & Moore, Gregory J. Newman and Hee Sung Yoon for Defendant and Appellant.

Berman Berman Berman Schneider & Lowary, Spencer A. Schneider and Karen E. Adelman for Plaintiff and Respondent.

# INTRODUCTION

This case centers on a commercial general liability insurance policy that Allied World Surplus Lines Insurance Company (Allied World) issued to California Specialty Insulation, Inc. (CSI). CSI filed an action for declaratory relief after Allied World refused to defend and indemnify CSI against a negligence claim following a construction site accident. The parties dispute whether one of the policy's exclusions from coverage for bodily injury liability applies under these circumstances.

The policy excludes from coverage bodily injury to the employees of any "contractor." The term "contractor" is not defined in the policy. Allied World contends the term is unambiguous and the exclusion precludes coverage for the negligence claim in question. CSI takes the opposite view. It argues the term is ambiguous and the exclusion does not apply to the negligence claim.

After the parties filed cross-motions for summary judgment, the trial court ruled in CSI's favor, granting its motion and denying Allied World's. The court determined the term "contractor" in the disputed exclusion was ambiguous, and ultimately construed the term in CSI's favor. We reach the same conclusion as the trial court. The term "contractor" in the disputed exclusion is ambiguous. Based on CSI's objectively reasonable expectations, the exclusion does not apply to the negligence claim in question. Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.     *The Underlying Negligence Claim*

In 2017, a real property owner retained Air Control Systems, Inc. (Air Control) to perform improvement work at a building in Los Angeles.  Air Control later retained CSI to install duct insulation as part of the project.

In 2019, Jason Standiford, an Air Control employee, filed a personal injury complaint against CSI, asserting one cause of action for general negligence.  Standiford alleged he suffered physical injuries in 2017 when he fell 16 to 20 feet after a CSI employee drove a scissor lift into a ladder he was standing on.

### B.     *The Insurance Policy*

At the time of Standiford's accident, CSI was insured through a commercial general liability insurance policy from Allied World.  Under the policy, Allied World agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies."  The policy stated Allied World had a duty to defend CSI "against any 'suit' seeking those damages," but also that Allied World had no duty to defend against a suit to which the policy did not apply.

As an addition to the list of exclusions from coverage for bodily injury liability, the policy set forth an endorsement titled "Bodily Injury to Any Employee or Temporary Worker of Contractors Exclusion" (Contractor Exclusion).  Relevant here, the Contractor Exclusion stated the policy did not apply to "'Bodily injury' . . . to any 'employee' or 'temporary worker' of any contractor or subcontractor arising out of or in the course of the

rendering or performing services of any kind or nature by such contractor or subcontractor." Neither the endorsement nor the policy as a whole defined the term "contractor."

C. *The Coverage Action*

CSI tendered its defense in Standiford's action to Allied World. Allied World accepted the defense without reserving any rights, and retained counsel filed an answer on CSI's behalf. Allied World later withdrew its defense, asserting the Contractor Exclusion precluded any defense or coverage obligation.

In February 2021, CSI filed a complaint for declaratory relief. CSI sought to establish that under the policy Allied World had duties to defend and indemnify CSI in the Standiford action.

The parties filed cross-motions for summary judgment, for which they stipulated to the relevant facts. In their motions, the parties narrowed their dispute to whether the Contractor Exclusion applied for purposes of the Standiford action.

The trial court granted CSI's motion and denied Allied World's. The court determined the Contractor Exclusion did not apply because the terms "contractor" and "subcontractor" were ambiguous and meant, in line with CSI's reasonable expectations, "CSI's contractor or subcontractor, i.e., a contractor or subcontractor retained by CSI." Because CSI did not retain Air Control, the court continued, Standiford was not an employee of a contractor or subcontractor within the meaning of the exclusion and CSI was entitled to the declaratory relief it sought. The court entered judgment in favor of CSI.

Allied World timely appealed.

4

# DISCUSSION

### A. *Standard of Review and Applicable Law*

"Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.'" (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; see Code Civ. Proc., § 437c, subds. (c) & (f).)  We review a ruling on summary judgment de novo.  (*Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 39.)

This appeal requires us to interpret an insurance policy. "In general, interpretation of an insurance policy is a question of law that is decided under settled rules of contract interpretation." (*State of California v. Continental Ins. Co.* (2012) 55 Cal.4th 186, 194; accord, *Yahoo Inc. v. National Union Fire Ins. Co. etc.* (2022) 14 Cal.5th 58, 67 (*Yahoo Inc.*) ["'"While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply."'"].)  "'Our goal in construing insurance contracts, as with contracts generally, is to give effect to the parties' mutual intentions.  [Citations.]  "If contractual language is clear and explicit, it governs." [Citations.]  If the terms are ambiguous [i.e., susceptible of more than one reasonable interpretation], we interpret them to protect '"the objectively reasonable expectations of the insured."' [Citations.]  Only if these rules do not resolve a claimed ambiguity do we resort to the rule that ambiguities are to be resolved against the insurer.  [Citation.]'  [Citation.]  The 'tie-breaker' rule of construction against the insurer stems from the recognition that the insurer generally drafted the policy and received premiums to provide the agreed protection."  (*Minkler v.*

*Safeco Ins. Co. of America* (2010) 49 Cal.4th 315, 321 (*Minkler*).) "To further ensure that coverage conforms fully to the objectively reasonable expectations of the insured, the corollary rule of interpretation has developed that, in cases of ambiguity, basic coverage provisions are construed broadly in favor of affording protection, but clauses setting forth specific exclusions from coverage are interpreted narrowly against the insurer. The insured has the burden of establishing that a claim, unless specifically excluded, is within basic coverage, while the insurer has the burden of establishing that a specific exclusion applies." (*Id.* at p. 322.)

      B.    *The Trial Court Did Not Err in Granting Summary Judgment in Favor of CSI*

The parties agree that the property owner hired Air Control to complete certain improvement work and that Standiford was performing such work as an employee of Air Control at the time of his accident. There is also no dispute that Standiford's negligence claim falls within the scope of the policy's general protection from bodily injury liability. But the agreement ends there. Allied World argues it does not have a duty to defend or indemnify CSI in Standiford's action because the Contractor Exclusion applies and thus precludes any defense or coverage obligation. CSI contends the opposite is true.

The parties' dispute turns on the language of the Contractor Exclusion and specifically its term "contractor."[1] CSI

---

[1] While the trial court also addressed the undefined term "subcontractor" in its summary judgment ruling, the parties focus

6

asserts the term is ambiguous and that its objectively reasonable expectations, as the insured, establish that the exclusion does not apply. Allied World argues the term is unambiguous and that, even if it is ambiguous, CSI's reasonable expectations support application of the exclusion. The trial court agreed with CSI's position. We do as well.

1. *The undefined term "contractor" in the Contractor Exclusion is ambiguous*

The Contractor Exclusion states in relevant part that the policy does not cover "'[b]odily injury' . . . to any 'employee' or 'temporary worker' of any contractor . . . arising out of or in the course of the rendering or performing services of any kind or nature by such contractor . . . ." While the policy does not define "contractor," that alone does not make the term ambiguous. (See *State of California v. Continental Ins. Co., supra,* 55 Cal.4th at p. 195.) Rather, the term is ambiguous only if "'it is capable of two or more constructions, both of which are reasonable.'" (*Ibid.*)

Allied World contends the term "contractor" unambiguously means anyone who has "contracted to work on a construction project." It cites dictionary definitions, arguing these show "the ordinary and popular meaning of 'contractor' is a person who has signed a contract to perform repair or improvement work, typically on a construction project." (See *Coast Restaurant Group, Inc. v. Amguard Ins. Co.* (2023) 90 Cal.App.5th 332, 339 ["we may resort to dictionary definitions, taking care to 'consider the policy context in which the word or term was used and

solely on the term "contractor" before this court. Thus, we too will limit our focus to the term "contractor."

attempt[ing] to put [our]self in the position of a layperson and understand how he or she might reasonably interpret the particular language'"].)  CSI concedes Allied World's definition is reasonable, but argues the term "contractor" can also be reasonably read as "anyone hired by the insured pursuant to contract."  CSI contends this more narrow reading of the term is consistent with the policy as a whole, particularly a separate but similar exclusion from coverage for bodily injuries of employees (but not contractors) of the insured.  (See *Minkler*, *supra*, 49 Cal.4th at p. 322 ["The existence of a material ambiguity in the terms of an insurance policy may not, of course, be determined in the abstract, or in isolation.  The policy must be examined as a whole, and in context, to determine whether an ambiguity exists."].)  For its part, the trial court determined both of these interpretations were reasonable, explaining the term could also reasonably mean "any party to a contract" or "a person in contractual privity with the insured."

Allied World argues that, in crediting all four of these interpretations as reasonable, the trial court strained to find ambiguity and ultimately erred by failing to apply the "clear and explicit" language of the exclusion.  In making this argument, Allied World focuses on the modifier "any," contending its placement next to "contractor" establishes the exclusion "is not limited to a subset of contractors, such as those hired by CSI."  Rather, Allied World argues, the full phrase "any contractor" shows the exclusion applies to employees of "every contractor" or "all contractors."  Emphasizing that point, Allied World asserts the word "'any' illuminates the meaning of 'contractor'" in so far as the word "signals that injuries to an employee of a

8

'contractor'—*however* reasonably defined—are excluded from coverage."

This argument is not persuasive. As an initial matter, we disagree with Allied World's suggestion that, regardless of the precise definition of "contractor," the exclusion will apply because the exclusion states it applies to "*any* contractor." For example, if we find CSI's preferred interpretation reasonable and agree with its position that the term "contractor" means "anyone hired by CSI pursuant to contract," the exclusion does not apply. Moreover, in stressing the importance of "any," Allied World avoids the primary issue of how to define "contractor." Allied World is correct that the phrase "*any* contractor" is interchangeable with the phrases "*every* contractor" and "*all* contractors." But none of these phrases helps resolve the ambiguity in so far as the term "contractor" remains undefined and subject to multiple reasonable interpretations. (See *North American Building Maintenance, Inc. v. Fireman's Fund Ins. Co.* (2006) 137 Cal.App.4th 627, 641 [explaining the word "any" did not help interpret an undefined policy term, "capacity," that "any" modified].)

As for the definition of "contractor," each side acknowledges that no published California case has interpreted the specific exclusion language at issue here. In lieu of a California case, the trial court found persuasive the analysis in *U.S. Liability Ins. Co. v. Benchmark Const. Services, Inc.* (1st Cir. 2015) 797 F.3d 116 (*Benchmark*).[2] In *Benchmark*, homeowners hired Benchmark as

---

[2] The First Circuit applied Massachusetts law in *Benchmark*. (*Benchmark*, *supra*, 797 F.3d at p. 119.) That law is without meaningful difference from the California law we apply here. (*Id.* at pp. 119-120.)

9

a general contractor to renovate their home, as well as an architect to design the renovation plans. (*Benchmark*, at p. 118.) The architect in turn hired a painter, and the painter's employee was injured while working on the project. (*Ibid.*) After the employee sued Benchmark for negligence, Benchmark tendered its defense to its insurer, U.S. Liability Insurance Company (USLIC). (*Ibid.*) In the ensuing coverage action, Benchmark and USLIC disagreed on whether the undefined term "contractor" was ambiguous in an exclusion that precluded coverage for "'Bodily injury' to any . . . 'employee' . . . of any contractor . . . arising out of . . . rendering services of any kind . . . for which any insured may become liable in any capacity." (*Id.* at pp. 118-119.) USLIC argued that the term unambiguously meant "anyone with a contract." (*Id.* at p. 123.) Benchmark, on the other hand, argued the term meant "someone with a contract *with the insured*," or rather someone it hired that was not a Benchmark employee. (*Ibid.*) Facing these different interpretations, the First Circuit determined the term was ambiguous because it was susceptible of more than one reasonable interpretation: "We are persuaded that reasonably intelligent people may differ about the meaning of the word 'contractor,' and hence the word is ambiguous. 'Anyone with a contract' is surely a reasonable definition of the word 'contractor,' as the district court found, but so is a more narrow definition focused on the contractual relationship of the injured party and the insured." (*Id.* at p. 124, fn. omitted.)

The Contractor Exclusion, including its term "contractor," mirrors the relevant policy language in *Benchmark*. Both exclusions preclude coverage for bodily injury suffered by an employee of any contractor that occurs during the employee's

10

work for the contractor. Like the insurer in *Benchmark,* Allied World contends "contractor" unambiguously means anyone performing work with a contract. While that broad reading is reasonable, so too is CSI's more narrow interpretation that the term means anyone CSI hired by contract other than its employees.[3]

Unlike *Benchmark*, which neatly fits the factual circumstances here, the cases Allied World cites from other jurisdictions are distinguishable. (See *Capitol Specialty Ins. Corp. v. Ortiz* (S.D.Fla. Apr. 20, 2018, No. 17-23329-CIV) 2018 WL 7291057 (*Capitol Specialty*); *Essex Ins. Co. v. RHO Chemical Co., Inc.* (N.D.Ill. 2015) 145 F.Supp.3d 780 (*Essex*).) *Capitol Specialty* and *Essex* each involved a policy that excluded coverage for bodily injury to employees of "any contractor." (*Capitol Specialty*, at p. *4; *Essex*, at pp. 785-786.) Like here, the exclusions in *Capitol Specialty* and *Essex* used the term "contractor" apparently without providing a definition. (*Capitol Specialty*, at p. *4; *Essex*, at p. 786.) Neither court found the term ambiguous. (*Capitol Specialty*, at p. *5; *Essex*, at pp. 789-790.) But in each case, and unlike here, the insured had hired the injured party's employer. (*Capitol Specialty*, at p. *4; *Essex*, at pp. 785, 791.) Thus, unlike CSI, the insureds in *Capitol Specialty* and *Essex* were not able to argue the term "contractor" could reasonably mean "anyone hired by the insured pursuant to

_____

[3]    Allied World tries to distinguish *Benchmark* on the ground that the First Circuit addressed a second ambiguity within the disputed exclusion. We agree with the trial court, however, that nothing in *Benchmark* shows this other ambiguity affected the First Circuit's resolution of the ambiguity in the term "contractor."

11

contract." Even with that meaning, the injured party's employer would constitute a contractor and the exclusion would apply. To that end, the court in *Capitol Specialty* noted its decision was consistent with *Benchmark*, explaining the insured defendants "have not presented a reasonable interpretation [of the term 'contractor'] that would provide coverage." (*Capitol Specialty*, at p. *5.)

Allied World also cites a different federal district court case that came to the opposite conclusion as *Benchmark* insofar as it determined the phrase "any independent contractor [or] subcontractor" was not limited to independent contractors or subcontractors hired by the insured. (See *James River Ins. Co. v. Keyes2Safety, Inc.* (N.D.Ill. July 24, 2012, No. 11-901) 2012 WL 3023334, at p. *3.) The court in *James River* did not consider whether the undefined terms "independent contractor" and "subcontractor" were ambiguous, and instead followed the Seventh Circuit's direction that "clear and unambiguous" terms "must be applied as written." (*Id.* at p. *4, citing *BASF AG v. Great American Assur. Co.* (7th Cir. 2008) 522 F.3d 813, 819.) Notably, the district court in *Benchmark* found the term "contractor" was unambiguous, and cited *James River* to support its conclusion that "*any* contractor" meant "anyone with a contract" because "[t]he term 'any' is plain and unambiguous and the Court is not permitted to alter that meaning." (See *U.S. Liability Ins. Co. v. Benchmark Construction Services, Inc.* (D.Mass. 2014) 31 F.Supp.3d 315, 321, revd. (1st Cir. 2015) 797 F.3d 116.) As discussed, and inherent in the First Circuit's reversal of that decision, when the word "any" modifies an undefined term, its utility in defining that term is limited at best. (See *North American Building Maintenance, Inc. v. Fireman's*

*Fund Ins. Co.*, *supra*, 137 Cal.App.4th at p. 641.)  Ultimately, because the term here is subject to multiple reasonable interpretations, we, like the trial court, decline to follow *James River*.

We also reject Allied World's contention that CSI seeks to improperly insert words into the Contractor Exclusion by defining "contractor" as "anyone hired by CSI pursuant to contract."  CSI is not rewriting the policy by offering a reasonable interpretation of an undefined term.  It is instead providing reasonable meaning to policy language where that meaning is otherwise uncertain.  The same is true for every reasonable interpretation of an ambiguous term, including Allied World's reading of the term "contractor" to mean "anyone contracted to work on a construction project" or anyone "who has signed a contract to perform repair or improvement work, typically on a construction project."

In sum, the term "contractor," as used in the Contractor Exclusion, is susceptible of more than one reasonable interpretation.  These interpretations include the parties' respective readings of "anyone performing construction work pursuant to contract" and "anyone hired by CSI pursuant to contract."  Because reasonable people may differ as to the meaning of the term "contractor," the term is ambiguous.

> 2.    *Based on CSI's objectively reasonable expectations, the Contractor Exclusion does not apply in this case*

To resolve the ambiguity in the term "contractor," we must interpret the term in a manner that protects the insured's objectively reasonable expectations.  (*Minkler*, *supra*, 49 Cal.4th

at p. 321.)  To do that, we examine the term in context and interpret the exclusion narrowly against the insurer.  (*Id.* at p. 322.)

As noted, CSI contends the term "contractor" means anyone CSI hired other than its employees.  CSI contends this narrower reading of the term best aligns with its objectively reasonable expectations as the insured.  Namely, CSI explains that in purchasing the policy it expected to be "protected from liability for accidental bodily injury arising out of the conduct of its insulation business, unless the injury was sustained either by a CSI employee or by an employee of a CSI contractor."  For the uncovered injuries, CSI notes, it maintained workers' compensation insurance and had the ability to require the same form of insurance be maintained by anyone it hired to perform work on its behalf.  In contrast, CSI continues, it "could not exercise the same control over all contractors in the world and thus had no objectively reasonable expectation that injuries to contractors unrelated to CSI would be excluded from coverage."  CSI contends these expectations are consistent with, and supported by, the purpose of commercial general liability insurance.

This logic once more echoes the analysis in *Benchmark*.  Faced with the same ambiguity, the First Circuit addressed the insured's reasonable expectations in light of the purpose of commercial general liability insurance.  (*Benchmark, supra,* 797 F.3d at pp. 122, 124.)  The court explained this form of insurance is meant "'to protect the insured against losses to third parties arising out of the operation of the insured's business,'" emphasizing that "[t]he relationship of the injured party to the insured is at the core of this type of 'broad coverage.'"  (*Id.* at

p. 122, quoting 9A Couch on Insurance (3d ed. 2014) §§ 129:1, 129:2.) If "contractor" broadly meant "anyone with a contract," the court explained, it would make "'a dice roll of every bodily injury claim, based on whether the injured party happened to be working under any contract no matter how attenuated to the insured's work.'" (*Benchmark*, at p. 124.) The court stated it was "unable to discern any reason why the parties would have contracted for coverage to depend on the coincidence of an injured party's contractual obligations in the world at large." (*Ibid.*; see also *United States Liability Ins. Co. v. WW Trading Co., Inc.* (E.D.N.Y., Sept. 28, 2018, No. 16-CV-3498 (CBA) (JO)) 2018 WL 6344641, at p. *14 [citing *Benchmark* while interpreting a similar exclusion, and stating, "Why would an insurance policy exclude coverage for individuals injured by [the insured] based solely on whether they are an employee or contractor of a random, third party (say Wal-Mart or Goldman Sachs)? The Court can see no reason."].)

The same analysis applies here. As the California Supreme Court has stated, a commercial general liability policy is meant to "'"provide the insured with the broadest spectrum of protection against liability for unintentional and unexpected personal injury or property damage arising out of the conduct of the insured's business."'" (*MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 654; see *id.* at p. 649 [the insuring language of a commercial general liability policy "'connotes general protection for alleged bodily injury caused by the insured'" and "establishes a reasonable expectation that the insured will have coverage for ordinary acts of negligence resulting in bodily injury"].) Consistent with that purpose, it would be objectively reasonable for an insured to interpret an exclusion that removed coverage for

15

contractors' employees' bodily injuries as being limited to those contractors that the insured hired and not contractors in the world at large.  As the court in *Benchmark* concluded, "[a] reasonable insured would expect the contractual relationship between the insured and the injured party to govern the applicability of an employer's liability exclusion to a given injury."  (*Benchmark*, *supra*, 797 F.3d at p. 124.)

Defining the term "contractor" more narrowly also comports with the policy as a whole.  With this reading, the Contractor Exclusion aligns with the separate "Employer's Liability Exclusion," which states the policy does not cover work-related bodily injuries of employees of the insured.  Thus, read together, the exclusions separately apply to preclude coverage for injuries of employees of the insured (Employer's Liability Exclusion) and injuries of employees of the insured's contractors (Contractor Exclusion)—that is, as CSI points out, injuries the insured can alternatively cover through its workers' compensation insurance or the workers' compensation insurance of anyone it hires to perform work on its behalf.  Moreover, as CSI also points out, reading "contractor" to mean "anyone with a contract," as Allied World proposes, would render the Employer's Liability Exclusion surplusage because CSI would qualify as a contractor for which the Contractor Exclusion would apply. (See *Yahoo Inc.*, *supra*, 14 Cal.5th at p. 69 ["Courts will favor an interpretation that gives meaning to each word in a contract over an interpretation that makes part of the writing redundant"]; see also *ACL Technologies, Inc. v. Northbrook Property & Casualty Ins. Co.* (1993) 17 Cal.App.4th 1773, 1785 ["In California, however, contracts—even insurance contracts—are construed to avoid rendering terms surplusage"].)

Allied World argues this surplusage concern is unfounded because the policy does not refer to CSI as a "contractor" and instead uses the words "you" and "your" to refer to the named insured.  But Allied World does not cite anything in the policy's provisions that precludes describing CSI with other terms.  And the language in the policy implies CSI is a "contractor."  For example, under an "Additional Insured" endorsement, the policy explains the insurance afforded to additional insureds does not apply to bodily injury occurring after "[t]hat portion of 'your work' out of which the injury or damage arises has been put to its intended use by any person or organization other than *another* contractor or subcontractor engaged in performing operations for a principal as a part of the same project."  (Italics added.)  In this context, the phrase "another contractor" clearly means a contractor in addition to CSI.

In sum, based on the reasonable expectations of the insured, "contractor," as it is used in the Contractor Exclusion, means "anyone hired by the insured pursuant to contract," or more simply, "CSI's contractor."  Under this definition, Standiford was not a contractor's employee because CSI did not hire his employer, Air Control.  Therefore, the Contractor Exclusion does not apply to preclude Allied World's defense and coverage obligations for purposes of Standiford's negligence claim.

## DISPOSITION

The judgment is affirmed.  CSI is entitled to recover its costs on appeal.

RAPHAEL, J.[*]

We concur:

MARTINEZ, P. J.

SEGAL, J.

---

[*]     Judge of the San Bernardino County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.