## ELLA BOAZOVA *vs.* SAFETY INSURANCE COMPANY.

Middlesex. March 6, 2012. - May 29, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, & GANTS, JJ.

*Insurance,* Homeowner's insurance, Coverage, Construction of policy, Water damage.

In a civil action brought by a homeowner (plaintiff), alleging that an insurer improperly denied coverage under a homeowner's insurance policy for damage to the plaintiff's house, the judge properly granted summary judgment in favor of the insurer, where, although the plaintiff's claimed loss was caused by one of the policy's enumerated perils insured against (namely, unknown and hidden seepage of water) and, accordingly, would be insured, the claimed loss concurrently was caused, directly or indirectly, by surface water that seeped or leaked into the wooden frame of her house, and as such, her loss was excluded from coverage under the explicit terms of the policy. [350-359]

CIVIL ACTION commenced in the Superior Court Department on July 17, 2007.

The case was heard by *Dennis J. Curran*, J., on motions for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Richard Moynihan* for the defendant.

*Daniel F. McCarthy* for the plaintiff.

SPINA, J. On July 17, 2007, Ella Boazova filed a complaint in the Superior Court against Safety Insurance Company (Safety), alleging that Safety improperly denied coverage under her homeowner's insurance policy for damage to her house. Count I of the complaint alleged breach of contract,[1] and Count II alleged unfair or deceptive acts or practices in violation of G. L. c. 93A. Safety filed an answer denying the allegations and raising

---

[1]Ella Boazova alleged that as a direct result of Safety Insurance Company's denial of her request for insurance coverage, she sustained damages of not less than $96,366.

numerous affirmative defenses. On October 23, 2008, after extensive discovery, Boazova filed a motion for partial summary judgment on the ground that there were no genuine issues of material fact with respect to Count I and, therefore, she was entitled to judgment as a matter of law on that count. Safety filed a cross motion for summary judgment as to both counts of the complaint. After a hearing, a judge denied Boazova's motion for partial summary judgment, granted Safety's cross motion for summary judgment, and ordered that the complaint be dismissed. Judgment entered for Safety on November 25, 2008. Boazova appealed. A divided panel of the Appeals Court affirmed, *Boazova* v. *Safety Ins. Co.*, 78 Mass. App. Ct. 438 (2010), and we granted Boazova's application for further appellate review. For the reasons that follow, we affirm.

1. *Background.* We summarize the undisputed facts contained in the summary judgment record, reserving some facts for later discussion in conjunction with specific issues. On June 26, 2001, Boazova purchased a house in Arlington that had been constructed in 1947. It is a two-story, wood-framed, single-family structure built against the side of a hill and supported by a concrete foundation, with a full basement and garage below the house. Around 1958, a concrete patio was built along the rear wall of the house at a grade that was higher than the home's foundation. Subsequently, a cement "cant" (an angular raised area) was installed along the edge of the patio to direct water away from the house. However, there was no waterproofing barrier or membrane between the patio and the rear wall of the house to prevent water from entering the structure's wooden frame. Approximately fifteen to twenty years ago, the house was covered with vinyl siding that extends down to the surface of the patio.

At the time she bought the house, Boazova also purchased a homeowner's insurance policy from Safety. The policy period relevant to these proceedings was from June 26, 2005, to June 26, 2006. At sometime prior to August 1, 2005, Safety modified the terms of the policy by means of an indorsement entitled "Limited Fungi, Wet or Dry Rot, or Bacteria Coverage."

On August 1, 2005, while renovating the kitchen of Boazova's

house, a contractor discovered severe deterioration of the wooden sill plate that rested on top of the concrete foundation at the base of the home's rear wall, as well as of the adjoining floor joists and wall studs.[2] Boazova described the area as "moist and falling apart" and stated that the floor underneath the bottom kitchen cabinets was "spongy and mushy." She reported the damage to Sanviti Insurance Agency, Inc., which, in turn, prepared a property loss notice that was forwarded to Safety. Safety assigned Craig Gillespie, a claims adjuster, to investigate Boazova's claim. On August 18, 2005, he visited Boazova's property and observed the deteriorated area.

Shortly thereafter, Gillespie retained the services of Robert G. Wilkin, a professional engineer associated with CBI Consulting, Inc., to conduct a full inspection and evaluation of the damage to Boazova's house. Wilkin met with Boazova, viewed the claimed damage, and prepared a written report for Safety detailing his observations and opinions. In his report, Wilkin concluded that "the cause of the deterioration of the wood sill below the rear wall [was] the placement of the concrete patio slab adjacent to the wall and above the sill. . . . The concrete enclosed the sill between the plaster ceiling and the patio concrete so that water seeping onto the top of the foundation could not dry and the sill rotted."

By letter dated October 19, 2005, Safety denied insurance coverage to Boazova. In the letter, Gillespie stated that Boazova had "informed [Safety] that ground and/or surface water entered [her] sill and rear wall due to installation of a pavement patio prior to [her] owning the residence." Relying on an exclusion in her homeowner's policy that states that Safety "do[es] not insure for loss caused directly or indirectly by[:] Water Damage," Gillespie informed Boazova that because "the water entered [her] home through the rear wall of [her] dwelling and the sill area," the damage was not covered under her policy. Subsequently, Gillespie reinspected Boazova's house. By letter dated May 2, 2006, he reaffirmed Safety's denial of her claim because the damage (1) was caused by a combination of surface water,

[2]No suggestion has been made that Boazova knew about the damage to the wooden sill plate, floor joists, or wall studs before its discovery on August 1, 2005.

deterioration, settling, and improper construction of the concrete patio; and (2) was not encompassed within the indorsement, which provides $10,000 in coverage for fungi, wet or dry rot, or bacteria, where the loss was not the result of a peril insured against.

Boazova proceeded to hire John W. Mroszczyk, a professional engineer, to inspect her house, which he did on August 28, 2006. In his written report, Mroszczyk stated that "[b]ecause of the concrete patio, the sill plate and about 10 to 12 inches of the exterior were below grade. This permitted moisture to migrate down to the foundation." It was his professional opinion, to a reasonable degree of engineering certainty, that "[t]he cause of the rotted sill plate, wall studs, and floor joists [was] the concrete patio that was poured directly against the house. This permitted moisture to migrate to the top of the foundation, rotting the clapboard siding, the 1x exterior, and eventually the sill plate, floor joists, and wall studs." Mroszczyk further opined that "[t]he collapse in the outer part of the floor joists, due to the rot, eventually would have resulted in a complete failure of the floor system."

The present action ensued. In his memorandum of decision and order dated November 21, 2008, denying Boazova's motion for partial summary judgment and granting Safety's cross motion for summary judgment, the judge found that there were no genuine issues of material fact and concluded that Safety's denial of coverage for the claimed loss was proper, as a matter of law, based on the terms of Boazova's policy. First, the judge stated that because "the rotted wood on Boazova's property as described by numerous experts constitute[d] wet and/or dry rot," the indorsement that specifically provided limited coverage for loss caused by fungi, wet or dry rot, or bacteria must serve as the basis for her claim. Next, the judge stated that even if the language of the policy were construed in favor of Boazova such that coverage applied to fungi, wet or dry rot, or bacteria resulting from a peril insured against, namely hidden seepage or leakage of water, Boazova still would need to prove that the damage occurred during the policy period. This, the judge concluded, she could not do. According to the judge, it was "undisputed that the water emanated from the outside and

seeped or leaked in through the gap between the concrete patio and the rear wall of the house. The inspectors report[ed] that it was this gap and the placement of the patio, built sometime before Boazova purchased the property, that ultimately caused the damage." The judge stated that because the patio, in its present state, was in existence prior to the time that Boazova purchased the house in 2001, she was unable to satisfy her burden of proving that the "hidden seepage" provision covered this particular damage. Finally, the judge continued, even if Boazova had met her burden of establishing coverage, Safety had adequately shown that the specific policy exclusion for loss caused by surface water, irrespective of any other cause or event, precluded recovery for an otherwise covered claim.

2. *Discussion.* Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002); *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). We review a decision to grant summary judgment de novo. See *Ritter* v. *Massachusetts Cas. Ins. Co.*, 439 Mass. 214, 215 (2003). "In a case like this one where both parties have moved for summary judgment, the evidence is viewed in the light most favorable to the party against whom judgment [has entered]." *Albahari* v. *Zoning Bd. of Appeals of Brewster*, 76 Mass. App. Ct. 245, 248 n.4 (2010). See *DiLiddo* v. *Oxford St. Realty, Inc.*, 450 Mass. 66, 70 (2007). A party seeking summary judgment may satisfy its burden of demonstrating the absence of triable issues, see *Pederson* v. *Time, Inc.*, 404 Mass. 14, 17 (1989), by showing that the party opposing the motion has no reasonable expectation of proving an essential element of its case. See *Kourouvacilis* v. *General Motors Corp.*, *supra.*

The proper interpretation of an insurance policy is a matter of law to be decided by a court, not a jury. See *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982). Like all contracts, if the language of an insurance policy is unambiguous, then we construe the words "in their usual and ordinary sense." *Citation Ins. Co.* v. *Gomez*, 426 Mass. 379, 381 (1998), quoting *Hakim* v. *Massachusetts Insurers' Insolvency Fund*, 424 Mass. 275, 280 (1997). Where the policy language is ambiguous,

"doubts as to the intended meaning of the words must be resolved against the insurance company that employed them and in favor of the insured." *August A. Busch & Co. of Mass.* v. *Liberty Mut. Ins. Co.,* 339 Mass. 239, 243 (1959). "This rule of construction applies with particular force to exclusionary provisions." *Hakim* v. *Massachusetts Insurers' Insolvency Fund, supra* at 282. "However, an ambiguity is not created simply because a controversy exists between the parties, each favoring an interpretation contrary to the other." *Citation Ins. Co.* v. *Gomez, supra,* quoting *Lumbermens Mut. Cas. Co.* v. *Offices Unlimited, Inc.,* 419 Mass. 462, 466 (1995).

An insured bears the initial burden of proving that the claimed loss falls within the coverage of the insurance policy. See *Markline Co.* v. *Travelers Ins. Co.,* 384 Mass. 139, 140 (1981); *Tumblin* v. *American Ins. Co.,* 344 Mass. 318, 320 (1962). Once the insured does this, the burden then shifts to the insurer to show that a separate exclusion to coverage is applicable to the particular circumstances of the case. See *Hanover Ins. Co.* v. *Talhouni,* 413 Mass. 781, 785 (1992); *Murray* v. *Continental Ins. Co.,* 313 Mass. 557, 563 (1943); *Camp Dresser & McKee, Inc.* v. *Home Ins. Co.,* 30 Mass. App. Ct. 318, 321 (1991). Finally, where the insured seeks to establish coverage through an exception contained within an exclusion to coverage, the burden shifts back to the insured to prove coverage for the claimed loss. See *Highlands Ins. Co.* v. *Aerovox, Inc.,* 424 Mass. 226, 230-231 (1997); *Massachusetts Prop. Ins. Underwriting Ass'n* v. *Wynn,* 60 Mass. App. Ct. 824, 826 (2004).

The thrust of Boazova's argument is that the judge erred in determining that she had failed to meet her burden of establishing coverage under the policy and that Safety, by contrast, had satisfied its burden of proving that her loss was specifically excluded from coverage. In Boazova's view, her loss was caused by hidden seepage of water, which, she contends, is one of the covered perils insured against enumerated in Safety's "all risk" insurance policy. Further, she continues, because it was hidden seepage, not surface water, that caused the damage to her house, the so-called "anticoncurrent cause" provision in the exclusions portion of her policy is inapplicable. Accordingly, Boazova contends that her homeowner's policy provided coverage for her

loss. Although the language of the policy and the indorsement is challenging to even the most careful reader because of the way it connects various coverages, exclusions, and exceptions, we conclude that Boazova's claimed loss — the deterioration and rotting of the wooden sill plate, adjoining floor joists, and wall studs — is excluded from coverage by unambiguous provisions in the policy.[3]

We set forth in some detail the specific language of Boazova's policy that guides our analysis. As to the initial matter of coverage, the relevant section of Boazova's policy, which was modified by the indorsement, and which we shall refer to as the "hidden seepage" provision, states:

"SECTION I — PERILS INSURED AGAINST

"COVERAGE A — DWELLING and COVERAGE B — OTHER STRUCTURES

"We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do *not* insure, however, for loss: . . . *Caused by*: . . . . (e) Any of the following: . . . (9) Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years *unless such seepage or leakage of water* or the presence or condensation of humidity, moisture or vapor and the resulting damage *is unknown* to all 'insureds' *and is hidden* within the walls or ceilings or beneath the floors or above the ceilings of a structure.

"3. Excluded under Section I — Exclusions.

"Under items 1. and 2., *any ensuing loss to property*

---

[3]Boazova's argument is clear that she regards the *cause* of her loss and the basis for her claim to be the hidden seepage of water, not wet or dry rot, which she considers to be the *result* of the seepage. Based on the opinions of the experts, the seeping of the water and the rotting of the sill plate, floor joists, and wall studs worked hand in hand to cause the damage to Boazova's house. That said, in light of the focus of Boazova's argument, we need not discuss the intricacies of the policy's coverage for fungi, wet or dry rot, or bacteria because this coverage "only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period . . . ." As will be discussed, our conclusion that Boazova's loss was not one of the covered perils insured against negates the coverage for fungi, wet or dry rot, or bacteria.

described in Coverages A and B *not excluded or excepted in this policy is covered.*" (Emphases added.)

Boazova's expert, Mroszczyk, and Safety's expert, Wilkin, agreed that Boazova's claimed loss was caused by the repeated seepage or leakage of water from her concrete patio down onto the top of her home's foundation, and that such damage had been hidden from Boazova's view until she started to renovate her kitchen. In his written report dated September 13, 2006, Mroszczyk opined that the placement of the concrete patio "permitted moisture to migrate to the top of the foundation, rotting the clapboard siding, the 1x exterior, and eventually the sill plate, floor joists, and wall studs." He further opined that "[t]he current situation is the result of rot and deterioration over an extended period of time," that "[t]he rot and deterioration was hidden," and that, "[w]ere it not for the water, the structure would still be intact."

In his written report dated September 2, 2005, Wilkin opined that "water seeping onto the top of the foundation could not dry and the sill rotted," and that "[t]he condition of the sill was hidden from view." During his deposition testimony on November 3, 2007, Wilkin further explained his opinion by stating that "instead of putting in a waterproofing barrier or membrane of some type to keep water from the patio side of the exterior of the building from entering through the wood framing and landing on the sill and rotting . . . the wood at the top of the foundation wall, the water that landed . . . on the patio would run against the building . . . and seep through the joints in the patio onto the wood framing that was below grade and wet the framing." Wilkin also testified that the process that resulted in the deterioration of the sill was "[p]retty much continuous"; that it had occurred over a period of weeks, months, or years; and that the damage was not visible prior to any dismantling of the property.

Based on the expert opinions of Mroszczyk and Wilkin, it would appear that Boazova's claimed loss was caused by one of the policy's enumerated perils insured against, namely unknown and hidden seepage of water and, accordingly, would be insured. However, our analysis does not end there because, under this

section of the policy, such loss is covered *only* to the extent "not excluded or excepted in this policy." We therefore must consider next whether Boazova's claimed loss was excluded or excepted in the policy.

The relevant section of Boazova's policy states:

"SECTION I — EXCLUSIONS

"1. We do not insure for loss *caused directly or indirectly* by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. . . . c. Water Damage, meaning: (1) Flood, *surface water*, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind . . . ." (Emphases added.)

The term "surface water" is not defined in the policy. However, we have described it as "waters from rain, melting snow, springs, or seepage, or floods that lie or flow on the surface of the earth and naturally spread over the ground but do not form a part of a natural watercourse or lake." *DeSanctis* v. *Lynn Water & Sewer Comm'n*, 423 Mass. 112, 115 n.6 (1996). See 5 J.A. Appleman & J. Appleman, Insurance Law and Practice § 3145, at 463 (1970) (" 'surface water' is water which is derived from falling rain or melting snow, or which rises to the surface in springs, and is diffused over the surface of the ground, while it remains in such diffused state, and which follows no defined course or channel, which does not gather into or form a natural body of water, and which is lost by evaporation, percolation, or natural drainage"); Restatement (Second) of Torts § 846 comment b, at 199 (1979) ("The term 'surface water' is used to describe water that occasionally accumulates from natural sources and that has not yet evaporated, percolated into the earth or found its way into a stream or lake").

Both of the experts described the origin of the seeping water and how it likely infiltrated Boazova's house. Mroszczyk opined in his written report that the manner in which the concrete patio was added to the house "permitted moisture to migrate to the top of the foundation, rotting the clapboard siding, the 1x exterior, and eventually the sill plate, floor joists, and wall studs." Wilkin

agreed, in even more specific terms, with Mroszczyk's assessment of the cause of Boazova's loss. In an affidavit dated August 4, 2008, Wilkin opined that "the rotting of the wooden sill and other wooden framing elements of the rear wall of the Insured Property was the result of a moist or wet condition caused by surface water in the form of rain or snow falling onto the concrete patio at the rear of the house, running along the surface of the concrete patio to the rear wall of the house, and then running down into gaps and joints in the patio onto the wood framing of the rear wall which was below the grade of the concrete patio." Boazova has not challenged this opinion from Wilkin.

There was no evidence that water seeped into the walls or beneath the floor of Boazova's kitchen from an internal source, such as a broken pipe. To the contrary, during her deposition testimony on May 8, 2008, Boazova stated that when her contractor opened the wall during the renovation process, he did not find any leaking pipes. Given that the patio was higher than the grade of the house's foundation, the water that accumulated thereon simply flowed along the patio and seeped into Boazova's house. The mere migration of water from the patio into the wooden sill, floor joists, and wall studs did not change its essential character as "surface water." See *Cameron* v. *USAA Prop. & Cas. Ins. Co.*, 733 A.2d 965, 969-971 (D.C. 1999) (water from melting snow that had collected on outdoor patio, which flowed naturally down stairs and into homeowners' basement, did not lose character as surface water); *Crocker* v. *American Nat'l Gen. Ins. Co.*, 211 S.W.3d 928, 936 (Tex. Ct. App. 2007) (ordinary meaning of "surface water" in homeowners' insurance policy reasonably included rain water that collected on surface of raised patio and flowed into house). See also *Smith* v. *Union Auto. Indem. Co.*, 323 Ill. App. 3d 741, 748 (2001) (given highly developed state of society's infrastructure, "average reasonable person would not limit surface water to water whose flow has not been altered in any way by paved surfaces, buildings, or other structures"); *State ex rel. State Fire & Tornado Fund of the N.D. Ins. Dep't* v. *North Dakota State Univ.*, 694 N.W.2d 225, 233 (N.D. 2005) (rain water did not lose character as surface water simply by being diverted underground through steam tunnel). Contrast *Heller* v. *Fire Ins.*

*Exch.*, 800 P.2d 1006, 1009 (Colo. 1990) (runoff from melted snow lost character as surface water when diverted by man-made trenches because trenches were "defined channels" that prevented "percolation, evaporation, or natural drainage"). Accordingly, we conclude that Boazova's claimed loss was caused, either directly or indirectly, by *surface water* that seeped or leaked into the wooden frame of her house. As such, under the explicit terms of the policy, her loss is excluded from insurance coverage. Had the seeping water originally come from within Boazova's house, it would not have been "surface water" and, therefore, would not have been excluded from coverage under that policy provision.

Boazova's attempt to differentiate "hidden seepage" from "surface water" in order to obtain insurance coverage is unavailing because, even if we were to view these terms differently, which we do not in the circumstances presented here, coverage still would be precluded. The language at the beginning of the exclusions section of the policy, stating that "[s]uch loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss," is known as an "anticoncurrent cause" provision. This provision entirely bars insurance coverage where a claimed loss is caused by a combination of covered and excluded perils, and we have upheld the inclusion of such language in an insurance policy.[4] See *Alton* v. *Manufacturers & Merchants Mut. Ins. Co.*, 416 Mass. 611, 613-615 (1993) (recognizing that anticoncurrent cause provision entirely barred coverage where excluded peril directly or indirectly caused loss, even though contributing cause of loss

---

[4]The inclusion of an "anticoncurrent cause" provision in an insurance policy is designed to circumvent the doctrine of efficient proximate cause whereby coverage is afforded as long as the predominant cause of the loss is a covered peril. See *Jussim* v. *Massachusetts Bay Ins. Co.*, 415 Mass. 24, 27 (1993) ("[if the proximate] cause is an insured risk, there will be coverage even though the final form of the property damage, produced by a series of related events, appears to take the loss outside of the terms of the policy"); *Lynn Gas & Elec. Co.* v. *Meriden Fire Ins. Co.*, 158 Mass. 570, 574-575 (1893); *Standard Elec. Supply Co.* v. *Norfolk & Dedham Mut. Fire Ins. Co.*, 1 Mass. App. Ct. 762, 765-766 (1974). See also *Alton* v. *Manufacturers & Merchants Mut. Ins. Co.*, 416 Mass. 611, 614-615 (1993) ("train of events" principle to determine efficient proximate cause of loss not applicable where insurer excludes coverage by anticoncurrent cause provision).

may have been covered peril); *Jussim* v. *Massachusetts Bay Ins. Co.*, 415 Mass. 24, 30-31 (1993) (suggesting anticoncurrent cause provision in general exclusions would operate to foreclose coverage notwithstanding insured's claim that covered peril was efficient proximate cause of loss). See also *Preferred Mut. Ins. Co.* v. *Meggison*, 53 F. Supp. 2d 139, 142 (D. Mass. 1999), aff'd, 246 F.3d 30 (1st Cir. 2001) (recognizing validity of anticoncurrent cause provisions); *Preferred Mut. Ins. Co.* v. *Travelers Cos.*, 955 F. Supp. 9, 11-12 (D. Mass.), aff'd, 127 F.3d 136 (1st Cir. 1997) (same). Contrast *Driscoll* v. *Providence Mut. Fire Ins. Co.*, 69 Mass. App. Ct. 341, 346-347 (2007) (where exclusion did not include anticoncurrent cause provision, damage to property caused by both covered and excluded perils was covered by policy). An anticoncurrent cause provision in an insurance policy does not create an ambiguity and, therefore, will be given effect according to its express terms. See *Alton* v. *Manufacturers & Merchants Mut. Ins. Co., supra.* See generally *Beacon Hill Civic Ass'n* v. *Ristorante Toscano, Inc.*, 422 Mass. 318, 320-321 (1996) (principles governing freedom of contract dictate that express terms of contract be enforced unless contrary to public policy). Our jurisprudence has never suggested, and neither party has argued, that denying enforcement of an anticoncurrent cause provision in a homeowners' insurance policy is necessary to protect some aspect of the public welfare.

We add that the "vast majority of [S]tates" that have considered the matter have upheld and applied anticoncurrent cause provisions when construing the language of insurance policies. *Preferred Mut. Ins. Co.* v. *Meggison, supra*, quoting Pate, Recent Developments in Property Insurance Law, 33 Tort & Ins. L.J. 659, 663 (1998). See, e.g., *Leonard* v. *Nationwide Mut. Ins. Co.*, 499 F.3d 419, 429-431 (5th Cir. 2007), cert. denied, 552 U.S. 1310 (2008) (anticoncurrent cause provision unambiguous and enforceable to exclude coverage where residence was destroyed by combination of covered peril [hurricane winds] and excluded peril [flooding]); *Front Row Theatre, Inc.* v. *American Mfrs. Mut. Ins. Cos.*, 18 F.3d 1343, 1347-1349 (6th Cir. 1994) (anticoncurrent cause provision that explicitly excluded coverage for flood damage relieved insurer from liability where flooding was contributing cause of damage);

*Cooper* v. *American Family Mut. Ins. Co.*, 184 F. Supp. 2d 960, 962 (D. Ariz. 2002) (in light of anticoncurrent cause provision, insured could not recover for loss caused by mold, which was expressly excluded from coverage, even though covered water event also may have contributed to loss); *Assurance Co. of Am.* v. *Jay-Mar, Inc.*, 38 F. Supp. 2d 349, 352-354 (D.N.J. 1999) (insurance policy language excluding from coverage losses caused by excluded peril acting concurrently or sequentially with included peril did not violate public policy); *State Farm Fire & Cas. Co.* v. *Bongen*, 925 P.2d 1042, 1045 (Alaska 1996) (insurer may expressly preclude coverage when damage to insured's property is caused by both covered and excluded risks); *Pakmark Corp.* v. *Liberty Mut. Ins. Co.*, 943 S.W.2d 256, 262 (Mo. Ct. App. 1997) (anticoncurrent cause provision excluded coverage for damage caused by combination of flooding [excluded peril] and sewage backup); *South Carolina Farm Bur. Mut. Ins. Co.* v. *Durham*, 380 S.C. 506, 510-513 (2009) (anticoncurrent cause provision and policy exclusion for underground water pressure damage precluded coverage for damage to insureds' swimming pool). See generally Phillips, Concurrent Causation Versus Efficient Proximate Cause in First-Party Property Insurance Coverage Analysis, 36 Brief 32, 35-39 (2007) (surveying fifty States on causation analysis in first-party property insurance matters).

We recognize that when construing insurance policy language, it is appropriate "to consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." *Trustees of Tufts Univ.* v. *Commercial Union Ins. Co.*, 415 Mass. 844, 849 (1993), quoting *Hazen Paper Co.* v. *United States Fid. & Guar. Co.*, 407 Mass. 689, 700 (1990). However, an insured cannot prevail simply by claiming an expectation of coverage, because most insureds typically expect that all of their losses will be covered. In the circumstances presented here, Boazova satisfied her initial burden of proving that her claimed loss — the deterioration and rotting of the wooden sill plate, adjoining floor joists, and wall studs — fell within the coverage of her homeowner's policy, namely the "hidden seepage" provision. Safety then satisfied its burden of showing that the exclusion for damage caused directly or

indirectly by surface water was applicable to Boazova's claim. In light of the anticoncurrent cause provision in the exclusions section of Boazova's policy, where the excluded peril — surface water — was a direct or indirect cause of the damage to Boazova's home, Safety was not obligated to provide insurance coverage "regardless of any other cause or event contributing concurrently or in any sequence to the loss."

*Judgment affirmed.*