NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13535

ZURICH AMERICAN INSURANCE COMPANY  vs.  MEDICAL PROPERTIES
TRUST, INC. (and a consolidated case[1]).


Suffolk.     April 3, 2024. - July 23, 2024.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, & Dewar, JJ.


Insurance, Property damage, Water damage, Coverage, Construction
     of policy.  Contract, Insurance, Construction of contract.
     Words, "Surface waters."



     Certification of a question of law to the Supreme Judicial
Court by the United States Court of Appeals for the First
Circuit.


     Creighton K. Page (Dale Jefferson, of Texas, & Martin C.
Pentz also present) for Medical Properties Trust, Inc.
     Patrick F. Hofer, of the District of Columbia (Peter C.
Netburn also present) for Zurich American Insurance Company.
     Howard M. Cooper, for Steward Health Care System LLC, was
present but did not argue.
     The following submitted briefs for amici curiae:
     Brian S. Goodman, of Maryland, & Seth H. Hochbaum for
National Association of Public Insurance Adjusters, Inc., &
another.
     Wystan M. Ackerman & Jonathan E. Small for American
Property Casualty Insurance Association.

---

[1] Steward Health Care System LLC vs. American Guarantee and
Liability Insurance Company & another.

Lorelie S. Masters, of the District of Columbia, Torrye N. Zullo, of New York, Michael S. Levine, & Nicholas D. Stellakis for United Policyholders.

KAFKER, J.  After a severe thunderstorm and heavy rain caused significant damage to Norwood Hospital (hospital), a facility owned by plaintiff Medical Properties Trust, Inc. (MPT), and leased to plaintiff Steward Health Care System LLC (Steward), MPT and Steward sought coverage from their respective insurers, Zurich American Insurance Company (Zurich) and American Guarantee and Liability Insurance Company (AGLIC) (collectively, insurers).  As a result of the storm, there was extensive accumulation of ground water and flooding of the basements of the hospital's two main buildings.  Additionally, rainwater accumulated on the rooftop courtyard of one of the hospital's main buildings, as well as the parapet roof[2] of that building and another hospital building.  The rain seeped through the parapet roofs and rooftop courtyard and into the interior of those hospital buildings, causing significant damage to the hospital and the property within.

The commercial property insurance policy sold by Zurich to MPT (Zurich policy) had an over-all coverage limit of $750 million, and the policy sold by AGLIC to Steward (AGLIC policy)

---

[2] A parapet roof is a roof enclosed by a wall surrounding the roof's outer perimeter.

had an over-all coverage limit of $850 million. However, both policies had lower coverage limits for damage to properties caused by "Flood" (flood sublimits), $100 million in the Zurich policy and $150 million in the AGLIC policy. As discussed in more detail infra, "Flood" is defined by both policies in part as "[a] general and temporary condition of partial or complete inundation of normally dry land areas or structure(s) caused by[] [t]he unusual and rapid accumulation or runoff of surface waters" (emphasis added).

The parties agree that the water damage to the hospital's basements was due to surface water and thus fell within the sublimits for damage caused by "Flood." They disagree, however, whether the water that accumulated on the roofs and infiltrated into the buildings was also surface water, and thus whether the damage resulting from the water infiltration was due to "Flood" and should be subject to the flood sublimits. After MPT and Steward each submitted proof of loss claims exceeding $200 million, the insurers took the position that substantially all the damage to the hospital was caused by "Flood" because the rainwater that accumulated on and seeped through the roofs was also "surface waters." Accordingly, the insurers informed MPT and Steward that their recovery under the policies would be limited by the flood sublimits.

Litigation ensued to determine the scope of coverage available to MPT and Steward under the policies.  Considering separate cross motions for partial summary judgment, the United States District Court for the District of Massachusetts held that the term "surface waters" in the policies' definition of "Flood" included the rainwater accumulated on the rooftop courtyard and the parapet roofs of the hospital and granted partial summary judgment to the insurers.  Recognizing that her resolution of this legal issue involved a controlling question of law for which there is substantial ground for difference of opinion, the judge allowed an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

MPT and Steward appealed, and the United States Court of Appeals for the First Circuit then certified the following question to this court:

> "Whether rainwater that lands and accumulates on either (i) a building's second-floor outdoor rooftop courtyard or (ii) a building's parapet roof and that subsequently inundates the interior of the building unambiguously constitutes 'surface waters' under Massachusetts law for the purposes of the insurance policies at issue in this case?"

Zurich Am. Ins. Co. v. Medical Props. Trust, Inc., 88 F.4th 1029, 1035 (1st Cir. 2023).  See S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981) (requirements for certification).

We conclude that the meaning of "surface waters," and thus the definition of "Flood" under the policies, is ambiguous in

regard to the accumulation of rainwater on roofs.  The uncertainty in the case law in Massachusetts and other jurisdictions confirms this ambiguity.  Indeed, the conflicting interpretations of the term "surface waters" are a direct result of the term's ambiguity.  As we must resolve such ambiguity in favor of the policy holders and against the insurance companies that drafted the policies, we conclude that the definition of "surface waters" does not include the rainwater that landed and accumulated on the rooftop courtyard and parapet roofs in this case, or at least it does not unambiguously include such accumulation of water on a roof.[3]

1.  Background.  a.  Facts.  We recite the facts as stated by the certifying court, supplemented by undisputed facts contained in the appendices submitted by the parties.

On June 28, 2020, a severe thunderstorm passed through the town of Norwood.  The heavy rain and strong winds caused significant damage to Norwood Hospital, a facility owned by MPT and leased to Steward.  There was extensive accumulation of ground water resulting in flooding in the basement of the hospital's two main buildings.  Rainwater also accumulated on

---

[3] We acknowledge the amicus briefs submitted by the National Association of Public Insurance Adjusters, Inc., and Massachusetts Association of Public Insurance Adjusters, Inc.; the American Property Casualty Insurance Association; and United Policyholders.

the hospital's parapet roofs and on the second-story courtyard of one of the hospital's main buildings, and eventually seeped through the parapet roofs and courtyard to the hospital's upper floors, causing damage to the building and property within.

After the storm, MPT sought coverage from its property insurer, Zurich, and Steward sought coverage from AGLIC.  Both the Zurich policy and the AGLIC policy contain substantively identical coverage and limitation provisions relevant to the instant case.  Both policies provide coverage for "damage caused by a Covered Cause of Loss to Covered Property" to a limit of $750 million for the Zurich policy and $850 million for the AGLIC policy.  Both policies consider "Flood" to be a covered cause of loss, and define "Flood" as:

> "A general and temporary condition of partial or complete inundation of normally dry land areas or structure(s) caused by:
>
> "The unusual and rapid accumulation or runoff of surface waters, waves, tides, tidal waves, tsunami, the release of water, the rising, overflowing or breaking the boundaries of nature or man-made bodies of water, or the spray there from all whether driven by wind or not."[4]

The policies have separate coverage limits for damages caused by floods; the Zurich policy limits its flood coverage to $100

---

[4] The policies also define "Flood" to include inundation caused by "[m]udflow or mudslides caused by accumulation of water on or under the ground," as well as "the backup of water from a sewer, drain or sump caused in whole or part by" other causes of "Flood."

million, and the AGLIC policy limits flood coverage to $150 million.

The insurers initially determined that the damage to the hospital's basement was due to "Flood" and would thus be subject to the policies' flood sublimits, but that the water damage to the upper floors of the hospital "appears to have resulted from water intrusion caused by wind driven rain and/or overflow of roof drains and parapet flashings" and thus the insurers stated that they would "separate the flood damage sustained on the basement and ground floors . . . from the water intrusion property damage sustained on the first, second[,] and third floors."  After MPT and Steward submitted proof of loss claims to Zurich and AGLIC that each exceeded $200 million, however, the insurers instead determined that "substantially all of the damages incurred . . . on June 28, 2020 are subject to the Flood sublimit[s]."  The insurers reasoned that the water that accumulated on the parapet roofs and rooftop courtyard was "surface water[]" and thus the resulting water damage to the upper floors of the hospital was damage due to "Flood" under the policies.

Both parties agree that the water damage to the hospital's basements was caused by surface water and thus is subject to the policies' flood sublimits.  The only contested issue before us is whether the water that accumulated on the parapet roofs and

rooftop courtyard and intruded into the hospital's first, second, and third floors is also surface water and thus damage due to "Flood."

b. Procedural history. Zurich sued MPT, seeking a judgment declaring that MPT's recovery under the policy was limited to the $100 million flood sublimit. Separately, Steward sued AGLIC, seeking a judgment declaring that the AGLIC policy's $150 million flood sublimit did not apply to all its losses from the storm. The parties filed cross motions for partial summary judgment on the interpretation of the term "surface waters" under each policy. In late 2022, the United States District Court for the District of Massachusetts granted partial summary judgment to the insurers, concluding that "surface waters" could include the accumulation of waters "constrained" before reaching the ground. The District Court's decision relied in part on Fidelity Co-Op. Bank v. Nova Cas. Co., 726 F.3d 31, 39-40 (1st Cir. 2013) (Nova), a case where the First Circuit considered accumulated water on the roof of a building to be "surface water" pursuant to an insurance policy. The District Court judge also allowed an interlocutory appeal regarding the question of the meaning of "surface waters" as she concluded it was a controlling question of law for which there was a substantial ground for difference of opinion. The First Circuit then certified the question to this court.

2.  Discussion.  Interpretation of an insurance contract is a pure question of law.  Ken's Foods, Inc. v. Steadfast Ins. Co., 491 Mass. 200, 203 (2023).  "If the language of an insurance policy is unambiguous, then we construe the words in their usual and ordinary sense."  Vermont Mut. Ins. Co. v. Poirier, 490 Mass. 161, 164 (2022), quoting Green Mountain Ins. Co. v. Wakelin, 484 Mass. 222, 226 (2020).  We also "consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered."  Dorchester Mut. Ins. Co. v. Miville, 491 Mass. 489, 493 (2023) (Miville), quoting Dorchester Mut. Ins. Co. v. Krusell, 485 Mass. 431, 437 (2020) (Krusell).  "However, if the policy language is ambiguous, 'doubts as to the intended meaning of the words must be resolved against the insurance company that employed them and in favor of the insured.'"  Green Mountain Ins. Co., supra, quoting Boazova v. Safety Ins. Co., 462 Mass. 346, 351 (2012).  "This rule of construction applies with particular force to exclusionary provisions."[5]  Miville, supra, quoting Allmerica

_____

[5] The provisions at issue in the policies in this case are sublimits and not express exclusionary provisions, but because the sublimits have the effect of excluding a substantial portion of the claimed losses from coverage under the policies, we consider our jurisprudence regarding exclusionary clauses to be instructive.  See City Fuel Corp. v. National Fire Ins. Co. of Hartford, 446 Mass. 638, 640 (2006) ("Exclusionary clauses must be strictly construed against the insurer so as not to defeat any intended coverage or diminish the protection purchased by the insured" [emphasis added]).

Fin. Corp. v. Certain Underwriters at Lloyd's, London, 449 Mass. 621, 628 (2007).

As we have previously explained, "[a]mbiguity is not created by 'the fact that the parties disagree as to [a term's] meaning,'" Verveine Corp. v. Strathmore Ins. Co., 489 Mass. 534, 539 (2022), quoting Krusell, 485 Mass. at 437, but rather "a term is ambiguous where 'it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one,'" Vermont Mut. Ins. Co., 490 Mass. at 164-165, quoting Krusell, supra.  See Surabian Realty Co. v. NGM Ins. Co., 462 Mass. 715, 718 (2012), quoting Bank v. Thermo Elemental Inc., 451 Mass. 638, 648 (2008) (term is ambiguous "where the phraseology can support a reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken").

We conclude that the meaning of "surface waters" in the policies at issue is ambiguous in this context.  "When deciding whether a term is ambiguous, we initially do not consider any extrinsic evidence of the intended meaning."  Krusell, 485 Mass. at 438.  "Instead, we look 'both to the contested language and to the text of the [insurance policy] as a whole.'"  Id., quoting James B. Nutter & Co. v. Estate of Murphy, 478 Mass. 664, 670 (2018).  "In attempting to ascertain possible relevant meanings, . . . we also look to case law to determine whether

courts have adopted a consistent interpretation."[6]  Krusell,

supra.  In the instant case, neither the specific policy

language nor the insurance policy as a whole directly addresses

whether surface water includes rainwater accumulating on the

surface of a roof.  This lack of clear definition is confirmed

by the case law across the country that is divided on the issue

with no consensus position.  All of this leads to our conclusion

that the policy provision is ambiguous as to the particular

question we are asked to decide.  Accordingly, rainwater that

lands and accumulates on either (i) a building's second-floor

outdoor rooftop courtyard or (ii) a building's parapet roof and

that subsequently inundates the interior of the building does

not unambiguously constitute "surface waters" under

Massachusetts law for the purposes of the insurance policies at

issue in this case.

We begin with the text of the policy provision.  "Flood" is

defined, in relevant part, as "[a] general and temporary

condition of partial or complete inundation of normally dry land

areas or structure(s) caused by:  . . . [t]he unusual and rapid

---

[6] We also consider dictionary definitions.  Here, there are
many different dictionaries and definitions from which to
choose, such that this inquiry, as demonstrated by the briefing,
is not particularly informative.  The dictionary definitions
provided in the briefing do not resolve the ambiguity of the
term "surface waters" in the context of the policy here.  If
anything, the different dictionary definitions showcase the
ambiguity.

accumulation or runoff of surface waters, waves, tides, tidal waves, tsunami, the release of water, the rising, overflowing or breaking of boundaries of nature or man-made bodies of water."

Both parties propose what appear to be plausible interpretations based on the policy language alone. MPT and Steward essentially contend that the plain meaning of "surface waters" is waters on the surface of the earth -- that is to say, water at ground level or on a ground-level surface. The flood provision's reference to "waves, tides, . . . [and] the rising, overflowing or breaking of boundaries of . . . bodies of water" further supports that interpretation. The listed terms all describe water on the ground or moving from a body of water or watercourse generally understood to be waters existing on the surface of the earth. See Krusell, 485 Mass. at 440 ("Words are, at least in part, defined by the company they keep"). Surface waters, in their view, are not merely waters accumulating on surfaces. The two words cannot be so separated.

The insurers, by contrast, contend that the plain meaning of "surface waters" is waters naturally accumulating on surfaces, not just waters accumulating on the surface of the earth. Their interpretation aligns with a literal interpretation of the words "surface waters," as well as the absence of the particular words "surface of the earth" or

"ground" in the definition of "Flood."[7]  The introductory clause's language of "inundation of normally dry . . . structure(s) caused by . . . surface waters" also supports this interpretation, as the water on the surface of the roof inundated the structures here.  Furthermore, the insurers rely on common-law cases defining surface water to include water overflowing from roofs.[8]  Finally, rain accumulating on the

---

[7] The policies also define "Flood" to mean damage caused by "[m]udflow or mudslides caused by accumulation of water on or under the ground."  The insurers argue that because the definition of "Flood" includes only mudflow or mudslides caused by water "on or under the ground," and because the policies do not specify that surface water must be on the ground, the flood provision must be read to mean that surface water can collect on surfaces other than the ground, such as a roof.  We disagree.  A more natural reading of the provision suggests that the language "caused by accumulation of water on or under the ground" is meant to clarify that whether a mudflow or mudslide is caused by the accumulation of water on or under the ground, damages from mudslides are still within the definition of "Flood" under the policies.

[8] The insurers cite several cases discussing a landowner's liability to others for channeling or directing surface water away from the landowner's property and onto the property of others and thereby causing damage.  See, e.g., Siciliano v. Barbuto, 265 Mass. 390, 394-395 (1929) (defendant liable to plaintiff for damage resulting from rainwater that landed on defendant's roof, flowed to ground onto plaintiff's land, and flowed into plaintiff's basement).  Because some of these cases suggest that rainwater that landed on a roof and subsequently was channeled through drains onto the ground was "surface water[]," the insurers argue that these cases stand for the proposition that rainwater that lands and accumulates on a roof but does not reach the ground is unambiguously surface water.  Although these cases do suggest that it would be reasonable to believe rainwater accumulation on a roof could be surface water, we cannot conclude that these cases dispel the ambiguity of the

ground and on a roof from the same storm would appear to be difficult for a reasonable insured to distinguish in this context. In both circumstances, an unusual and rapid natural accumulation of rainwater is inundating a structure.

Given this uncertainty, we turn to case law to determine whether courts have adopted a "consistent interpretation" of whether surface waters include accumulated water on a roof, beginning with our own. Krusell, 485 Mass. at 438. We conclude there is no such consistent interpretation when a comprehensive review of the case law is undertaken.

We have decided two cases interpreting the meaning of surface waters in similarly worded insurance policies. One case involved the accumulation of rainwater on a parking lot that "surround[ed] . . . the [insured] building." Surabian Realty Co., 462 Mass. at 716. In that case, "heavy rains collected in the parking lot and seeped under the door of the building, flooding its lower level." Id. In our other case, Boazova, 462

---

term "surface waters." First, it appears that in the cases cited, the water that caused injury to the plaintiffs flowed from the roof to the ground before causing damage. See, e.g., Cochran v. Barton, 233 Mass. 147, 149-150 (1919) (rainwater was directed from defendant's roof through drain spout onto public sidewalk, where it froze and allegedly caused plaintiff to slip); Maloney v. Hayes, 206 Mass. 1, 2 (1910) (same); Field v. Gowdy, 199 Mass. 568, 570 (1908) (same). Second, the characterization of the water in those cases as "surface waters" was not dispositive of whether the landowners were liable for channeling the water away from their property.

Mass. at 355, the damage to the property "was . . . caused by surface water in the form of rain or snow falling onto the concrete patio at the rear of the house, running along the surface of the concrete patio to the rear wall of the house, and then running down into gaps and joints in the patio onto the wood framing of the rear wall which was below the grade of the concrete patio." The insured property in Boazova was also built into the side of a hill, with the concrete patio constructed several inches higher than the foundation of the property. Id. at 347. In both cases, we decided that the water was surface water, which we defined as "waters from rain, melting snow, springs, or seepage, or floods that lie or flow on the surface of the earth and naturally spread over the ground but do not form a part of a natural watercourse or lake." Id. at 354, quoting DeSanctis v. Lynn Water & Sewer Comm'n, 423 Mass. 112, 115 n.6 (1996). We further explained that "[r]ain that collects on a paved surface, such as a parking lot, retains its character as surface water." Surabian Realty Co., supra at 718-719. Neither case involved the accumulation of rain on a roof.

The First Circuit, interpreting Massachusetts law, however, extended this analysis to roofs in Nova, 726 F.3d at 40. Like the present case, Nova involved a parapet roof that was inundated due to heavy rains that seeped through the roof and caused damage to the interior of the insured building. Id.

at 38.  The First Circuit characterized our decisions in Boazova and Surabian Realty Co. as "confirm[ing] that damage resulting from water that flooded into properties after accumulating on artificial surfaces does not lose its character as 'surface water' merely because it flowed along the artificial surface and seeped into or continued to flow onto the property."  Id. at 40. Accordingly, the First Circuit "[saw] no reason to disturb the [D]istrict [C]ourt's finding that the 'ponded' water on the roof of the property here was 'surface water.'"  Id.

Notably, however, as the First Circuit recognized in certifying the question to us, the parties in Nova did not contest the finding that water accumulated on the roof was surface water.  Zurich Am. Ins. Co., 88 F.4th at 1033, citing Nova, 726 F.3d at 39.  Moreover, the dispositive holding in Nova was that the water damage was covered by a separate policy endorsement that covered damages caused by the overflow of a drain.  Nova, supra at 37 n.2.  Accordingly, when the First Circuit certified the instant question to this court, it acknowledged that MPT and Steward "present[ed] several compelling reasons for deeming [Nova's] interpretation of 'surface water' to be dicta."  Zurich Am. Ins. Co., supra.  The discussion of surface water in Nova was, however, extensive and has been cited by a number of other courts.  See Nova, supra at 35-37, 39-40.  See also Danville Commercial Indus. Storage, LLC

v. Selective Ins. Co. of S.C., 442 F. Supp. 3d 921, 927 (W.D. Va. 2020) (citing Nova and concluding that water ponded on roof was surface water within meaning of insurance policy); Oak Hill Inv. IV LLC vs. State Farm Fire & Cas. Co., U.S. Dist. Ct., No. 15-cv-1996 (N.D. Ohio Sept. 27, 2017) (same).

Our review of the case law outside of Massachusetts also reveals no "consistent interpretation" of whether surface waters include rainwater accumulated on a roof. See Krusell, 485 Mass. at 438-439. As a leading treatise has recognized, "there are conflicting views [among courts] as to whether damage from water that has collected on a roof from precipitation is water damage from rain or from surface water." 11 J.R. Plitt, S. Plitt, D. Maldonado, & J.D. Rogers, Couch on Insurance 3d § 153:50 (Nov. 2023 update) (collecting cases and identifying split of authority). "The basic point of disagreement is the importance of the requirement that the water be on the ground to constitute surface water." Id.[9] Some courts have concluded that the water must be on the ground,[10] but others have not, reasoning that

---

[9] The same treatise, citing the First Circuit's decision in Nova, states that "[u]nder Massachusetts law, 'ponded' water on [the] roof of insured property was 'surface water' under [an] all-risk insurance policy." Couch on Insurance 3d § 153:50 n.10.

[10] See, e.g., Aetna Fire Underwriters Ins. Co. v. Crawley, 132 Ga. App. 181, 183 (1974), quoting American Ins. Co. v. Guest Printing Co., 114 Ga. App. 775, 776 (1966) ("'the majority of

surface waters "embrace waters derived from falling rain and melting snow, whether on the ground or on the roofs of buildings thereon," Nathanson v. Wagner, 118 N.J. Eq. 390, 392-393 (1935). See Danville Commercial Indus. Storage, LLC, 442 F. Supp. 3d at 927 ("the plain meaning of 'surface water' in the Policy includes water that ponds on a roof"); Oak Hill Inv. IV LLC, U.S. Dist. Ct., No. 15-cv-1996 (water that accumulated on roof and subsequently entered insured building through open air conditioning unit was "surface water").[11]

Despite the contentions of the parties, we cannot discern a clear majority position.[12]  Indeed, even within some

_____

cases apply the term ["surface water"] strictly to water on the surface of the ground,' and refuse to apply the term to rainwater falling on and flowing from the roof of the insured dwelling" [citation omitted]).

[11] Other courts have also suggested in dicta that rainwater falling on a roof could constitute surface water, albeit doing so in the context of discussing water at ground level.  See Cameron v. USAA Prop. & Cas. Ins. Co., 733 A.2d 965, 966, 969 (D.C. 1999) (agreeing with definition of "surface water" used in Nathanson, 118 N.J. Eq. at 392-393, and holding snowmelt on ground-level patio was surface water under insurance policy); Smith v. Union Auto. Indem. Co., 323 Ill. App. 3d 741, 748, 749-750 (2001) (noting that "[t]he average reasonable person would not limit surface water to water whose flow has not been altered in any way by paved surfaces, buildings, or other structures").

[12] Both the insurers and MPT argue that their particular interpretation of the term "surface waters" is the majority position among courts throughout the country.  This mirrors courts in other jurisdictions that have similarly asserted both that the majority position is that "surface waters" includes water on a roof, see, e.g., Danville Commercial Indus. Storage,

jurisdictions, appellate courts have reached conflicting

conclusions as to whether rain on the roof of a building is

surface water within the meaning of an insurance policy.

_____

LLC, 442 F. Supp. 3d at 927 ("the majority of [courts] to have addressed this question have concluded that 'surface water' includes water on a roof"); Oak Hill Inv. IV LLC, U.S. Dist. Ct., No. 15-cv-1996 ("there is a minority of courts who have found water pooling on artificial surfaces, including roofs, is not considered 'surface water"); Martinez v. American Family Mut. Ins. Co., 2017 COA 15, ¶ 34 ("the overwhelming majority of jurisdictions that have addressed the issue . . . view precipitation collecting on a roof or other man-made structures as 'surface water'"), and that it does not, see, e.g., American Ins. Co., 114 Ga. App. at 776 ("the majority of cases apply the term ['surface water'] strictly to water on the surface of the ground").  As illustrated by our discussion of case law from other jurisdictions, there does not appear to be a definite majority position on the issue.  We also note that most jurisdictions that have defined the term "surface waters" in the insurance context have done so only in cases involving water at ground level.  See, e.g., Heller v. Fire Ins. Exch., 800 P.2d 1006, 1008-1009 (Colo. 1990) (natural runoff from melted snow lost its character as surface water when it was diverted through drainage trenches); State ex rel. State Fire & Tornado Fund of the N.D. Ins. Dep't v. North Dakota State Univ., 2005 ND 75, ¶¶ 22-26 (water that flowed from ground into sports stadium and then through steam tunnel into heating plant and computer center was surface water and thus was excluded peril under insurance policies at issue); State Farm Fire & Cas. Co. v. Paulson, 756 P.2d 764, 769 (Wy. 1988) (Paulson) (water flowing on ground through broken window into basement was surface water).  See also Flamingo S. Beach I Condo Ass'n v. Selective Ins. Co. of S.E., 492 Fed. Appx. 16, 20 (11th Cir. 2012) (applying Federal law; "the majority of these cases [interpreting term 'surface water'] do not involve water pooled on a surface significantly elevated from the surface of the ground").  These cases often defined "surface waters" to include water either on the ground or on the surface of the earth, see, e.g., Paulson, supra at 770-772 (collecting cases), but like Boazova, 462 Mass. at 354, and Surabian Realty Co., 462 Mass. at 718-719, they did not explicitly address the issue whether surface water can exist on an elevated artificial surface like a roof, as they did not need to decide the issue.

Compare Martinez v. American Family Mut. Ins. Co., 2017 COA 15, ¶ 35 ("precipitation [that] fell onto [plaintiff's] roof and then flowed directly into [basement] window wells . . . was surface water"), and Sherwood Real Estate & Inv. Co. v. Old Colony Ins. Co., 234 So. 2d 445, 447 (La. Ct. App. 1970) (rainwater pooled on roof was "surface water" excluded from coverage of windstorm insurance policy), with Morley v. United Servs. Auto. Ass'n, 2019 COA 169, ¶ 31 (rainwater falling onto roof then directly entering property through holes in roof is not surface water), and Cochran v. Travelers Ins. Co., 606 So. 2d 22, 24 (La. Ct. App. 1992) ("There is no indication that [the term 'surface water'] was meant to encompass the situation here, of rainwater, falling from the sky, overflowing the rooftop and seeping into the interior of the building from the 'roof, its gutters, and the metal capping on the roof'").

Still other courts have concluded, as we ultimately do today, that it is ambiguous whether the term "surface waters" in an insurance policy describes rainwater that has accumulated on the roof of a building, and have accordingly construed such ambiguity in favor of the insured. See McCorkle v. Penn Mut. Fire Ins. Co., 213 So. 2d 272, 273 (Fla. Dist. Ct. App. 1968); American Ins. Co. v. Guest Printing Co., 114 Ga. App. 775, 776 (1966). See also State ex rel. State Fire & Tornado Fund of the N.D. Ins. Dep't v. North Dakota State Univ., 2005 ND 75, ¶ 15.

("Although the definition of surface water varies little in the case law, courts have had difficulty applying the definition to particular sets of facts").

Based on this overview, we conclude that there is no consistent interpretation in the case law regarding whether the term "surface waters" includes rainwater accumulating on a roof. Rather, two different reasonable interpretations of the term "surface waters" emerge, a broader interpretation that includes rainwater accumulating on a roof, as exemplified by the First Circuit's discussion in Nova, 726 F.3d at 39-40, and a more narrow interpretation that would exclude water not on the ground or the surface of the earth, as our decisions in Boazova, 462 Mass. at 354, and Surabian Realty Co., 462 Mass. at 718-719, imply but do not decide. Accordingly, the case law confirms and does not resolve the ambiguity present in the policy language itself, which, as discussed above, does not include a definition of surface water,[13] or otherwise address whether the accumulation of rainwater on roofs is or is not "surface waters."

---

[13] We note that "a term is not ambiguous or construed against the insurer merely because it is not explicitly defined in an insurance policy. Undefined terms may still be unambiguous, just as a term may remain ambiguous despite the insurer's attempt to define it." Verveine Corp., 489 Mass. at 539 n.9. Here, however, the absence of a definition in the policy contributes to the ambiguity.

In sum, we conclude that it is ambiguous whether rainwater accumulation on roofs constitutes "surface waters" within the meaning of the policies. In evaluating such accumulation, the term "surface waters" as used in the present policies is susceptible to two meanings, and reasonably intelligent persons could differ as to which meaning is the proper one. See Vermont Mut. Ins. Co., 490 Mass. at 164-165. Our conclusion that this language is ambiguous is confirmed by the inconsistency in the case law, which flows naturally from this ambiguity. As we must read any such ambiguity in the policies in favor of the policy holder, we do so in the instant case. See Green Mountain Ins. Co., 484 Mass. at 233 (rejecting insurer's proffered "expansive reading" of insurance policy term because such reading "would defeat our long-standing principle of strictly construing exclusions from coverage against the insurer").

"[W]here the insurer had the ability to include . . . language in its policy" that clearly would have excluded a disputed loss "and failed to do so," we will not interpret the policy to exclude coverage for that loss. Green Mountain Ins. Co., 484 Mass. at 234. The insurers here could have defined surface waters to include the unusual accumulation of rainwater on a roof, but they did not clearly do so. See Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 13 (1989) ("the resolution to the quandary proposed by [insurer]

lies, in the first instance, with the language of its policy. If an insurer desires to cover [only certain types of harms], . . . then the insurer can issue a policy which says as much"); Vermont Mut. Ins. Co. v. Zamsky, 732 F.3d 37, 44 (1st Cir. 2013) (applying Massachusetts law; if insurer had "wanted to exclude from coverage all injuries occurring at an owned premises that it did not insure [rather than only injuries arising out of owned premises], it would have been child's play to say so"). Because the insurers did not do so, it remains ambiguous whether the damage to Norwood Hospital from water infiltration through the roof is subject to the policies' sublimits, and therefore we must rule in the insureds' favor.

3. Conclusion. We answer the reported question as follows. Rainwater that lands and accumulates on either a building's second-floor outdoor rooftop courtyard or a building's parapet roof does not unambiguously constitute "surface waters" under Massachusetts law for the purposes of the policies at issue in this case. We also report that any such ambiguity as to the intended meaning of the words must be resolved against the insurance company that employed them and in favor of the insured.

The Reporter of Decisions is directed to furnish attested copies of this opinion to the clerk of this court. The clerk in turn will transmit one copy, under the seal of the court, to the

clerk of the United States Court of Appeals for the First Circuit, as the answer to the question certified, and will also transmit a copy to each party.