SUPREME JUDICIAL COURT 
 
 IN THE MATTER OF THE TRUSTS UNDER THE WILL OF HELYN W. KLINE

 
 Docket:
 SJC-13579
 
 
 Dates:
 September 9, 2024 - November 5, 2024
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.
 
 
 County:
 Barnstable
 

 
 Keywords:
 Trust, Allocation of payments between principal and income, Distribution, Remainder interests, Construction, Trustee's discretion, Trustee's authority. Devise and Legacy, Remainder interests. Statute, Construction. Will, Construction. Intent. Practice, Civil, Summary judgment.
 
 

             Petition filed in the Barnstable Division of the Probate and Family Court Department on September 30, 2022.
            The case was heard by Susan Sard Tierney, J., on motions for summary judgment.
            The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.
            Tracey L. Taylor for the petitioner.
            Christopher H. Lindstrom for the trustees.
            WENDLANDT, J.  This case presents the question whether the Massachusetts Principal and Income Act, G. L. c. 203D, §§ 1-29 (MPIA or act), permitted a trustee of trusts having an income beneficiary and remainder beneficiaries to adjust between principal and income after he pursued a total growth strategy that disproportionately increased trust principal relative to trust income.  We conclude that, because the trust instrument, a will, does not clearly evince the testator's intent to deny the trustee the power to adjust, the MPIA permitted the trustee to adjust between principal and income to administer the trusts based on what was fair and reasonable to all of the beneficiaries.  Further concluding that the petitioner failed to create a triable issue of fact that the trustee abused his discretion in exercising the power to adjust, we affirm the Probate and Family Court judge's allowance of summary judgment in favor of the trustee.
            1.  Background.  a.  Facts.  We set forth the facts in the light most favorable to the party against whom summary judgment was entered.  Boazova v. Safety Ins. Co., 462 Mass. 346, 350 (2012).
            In 1988, Helyn W. Kline died testate.  Under the terms of Kline's will, separate trusts were created for the benefit of her daughters.  This case pertains to the trusts to benefit one of those daughters, Denise Jo Levy.
            Levy is the income beneficiary of the trusts; as such, she is entitled to distributions of the trusts' net income.[1]  In addition, the will permits the trustees to distribute to Levy such portions of principal that the trustees "in their absolute discretion, may deem necessary for any emergency affecting" Levy.  Kline expressly set forth her intent that "principal distributions be made to [Levy] only under the most extraordinary circumstances."  The will further states that Kline did "not anticipate the probability that any principal distributions [to Levy would] be required."  Levy's three sons, Stephen Judson, William Judson, and the petitioner, Peter Judson,[2] are the current remainder beneficiaries.[3]  Robert Friedman (trustee) and Levy are the current trustees of the trusts.
            b.  Procedural history.  Peter[4] filed a petition in the Probate and Family Court alleging that, since 2020, improper distributions had been made to Levy in excess of the trusts' net income.  The trustee timely filed an affidavit of objections to Peter's petition.
            In his affidavit, the trustee averred that, since being established, the trusts had "experienced significant growth of principal"; however, the trusts' income had "not kept pace."  The trustee stated that the income in 2021 was approximately two percent of the principal's value.  He explained that, had he modified the investment strategy by "shifting . . . to investments that pay higher yield and rate of income" so as to benefit Levy, the income beneficiary, the likely result would have been "lower long term returns," which would be detrimental to the remaindermen, Peter and his brothers.  In addition, the trustee stated, the modified strategy would likely have triggered a tax on the capital gains realized following the needed sale of equity assets.  In brief, such a strategy would have favored Levy, the income beneficiary of the trusts, but not the remainder beneficiaries.
            Accordingly, the trustee determined to exercise the power to adjust set forth in the MPIA.[5]  He transferred some of the trusts' assets from principal to income.  In doing so, the trustee averred, he considered Levy's cost of living, Levy's other income sources, and the relevant factors set forth in the MPIA, including the intent of the testator.  See G. L. c. 203D, § 4 (b).  Following this adjustment, he distributed $90,000 in trust income to Levy, which comprised approximately 3.2 percent of the three-year average value of the trusts.  After the shift of principal to income, the distributions to Levy "increased by approximately 1.1 [percent] of the total value" of the trusts' principal (averaged over the past three years).
            The trustee and Levy moved for summary judgment on the basis that the trustee was authorized under the MPIA to adjust between principal and income "for the benefit of all beneficiaries."  Peter opposed the trustees' motion and cross-moved for partial summary judgment, contending that the will expressly precluded the trustee from invoking the MPIA's power to adjust.
            In support of his opposition and cross motion, Peter averred that Levy "repeatedly advised" him that her investment portfolio contained approximately $1 million and that she had "earned about $250,000."  He stated Levy "lives alone in a five (5) bedroom, 3,800 square foot apartment" that cost her "almost $6,000 per month in 2015."  In short, Peter asserted that Levy was not facing the type of emergency situation required to permit the trustee to invade the trusts' principal under the terms of the will.
            The Probate and Family Court judge granted the trustees' motion and denied Peter's motion.  Peter timely appealed.  We transferred the case to this court on our own motion.
            2.  Discussion.  We review the judge's allowance of summary judgment and questions of statutory interpretation de novo.  See Matter of the Estate of Mason, 493 Mass. 148, 151 (2023); Matter of the Estate of Jablonski, 492 Mass. 687, 690 (2023).  Summary judgment is proper where there is no genuine issue as to any material fact and a party is entitled to judgment as a matter of law.  Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).  Where the party opposing summary judgment will bear the burden of proof at trial, the moving party is entitled to summary judgment if that party demonstrates the opposing party "has no reasonable expectation of proving an essential element of that party's case."  Jinks v. Credico (USA) LLC, 488 Mass. 691, 704 (2021), quoting Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).  The opposing party must then "set forth specific facts showing that there is a genuine issue for trial."  Mass. R. Civ. P. 56 (e).  Where parties cross-move for summary judgment, "the evidence is viewed in the light most favorable to the party against whom judgment [has entered]."  Boazova, 462 Mass. at 350.
            Where, as here, we are called upon to construe a statute, we begin with its plain language, which, if unambiguous, is "conclusive as to legislative intent."  Six Bros., Inc. v. Brookline, 493 Mass. 616, 622 (2024), quoting Sharris v. Commonwealth, 480 Mass. 586, 594 (2018).  
"[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated" (citation omitted).
Matter of the Estate of Mason, 493 Mass. at 151, quoting Harvard Crimson, Inc. v. President & Fellows of Harvard College, 445 Mass. 745, 749 (2006).
            a.  Statutory framework.  i.  Competing duties.  Enacted in 2005, the MPIA comprehensively governs the treatment of principal and income for trusts.  G. L. c. 203D, §§ 1-29.  St. 2005, c. 129 (effective Jan. 1, 2006).  One of the act's central purposes is to address the "vexing problem" faced by trustees saddled with the sometimes-conflicting aims of the duty to invest trust assets under the prudent investor rule,[6] on the one hand, and the duty to administer the trust impartially so as to treat fairly both current beneficiaries entitled to distributions from net income and beneficiaries entitled to future distributions of principal, on the other.[7]  3 M.J. Bloostein, Newhall's Settlement of Estates and Fiduciary Law in Massachusetts § 37:4.50 (5th ed. Supp. May 2024).[8]
            In particular, a prudent investment strategy may counsel investing to maximize the trust's total return but may result in growth in principal without a comparable growth in income.  Such a strategy may comply with the prudent investor rule, but it may improperly favor remainder beneficiaries over income beneficiaries.
            Similarly, an investment strategy that maximizes traditional trust accounting income such as interest, dividends, and rents may result in a lopsided win for the income beneficiary at the expense of the remainder beneficiary.  The rigid characterization of investment returns as "income" or "principal" limited a trustee's ability to take advantage of an over-all investment strategy that maximized the expected total return of the trust's assets.  See id.
            ii.  Power to adjust.  The MPIA solves this conundrum by permitting a trustee who pursues a prudent investment strategy to maximize the trust's total return without regard to the characterization of that return as "principal" or "income" to adjust trust assets between principal and income to administer the trust impartially based on what is fair and reasonable to all of the beneficiaries.  In other words, the MPIA allows a trustee to shift what traditionally might be characterized as an increase in the value of principal to income, and vice versa, in order to maintain equitable treatment among beneficiaries while at the same time pursuing a prudent investment strategy.  See Uniform Principal and Income Act § 104 comment (1997), 7A U.L.A. (Part IV) 299 (Master ed. 2017) (act "enable[s] a trustee to select investments using the standards of a prudent investor without having to realize a particular portion of the portfolio's total return in the form of traditional trust accounting income such as interest, dividends, and rents"); Ad Hoc Principal and Income Act Committee, Massachusetts Principal and Income Act Report, in Understanding and Using Trusts, Exhibit 14A, at 20 (Mass. Cont. Legal Educ. 5th ed. 2022) (discussing power to adjust, which enables "a total return approach to investing").
            Specifically, § 4 (a) of the act permits a trustee to adjust between principal and income to administer the trust impartially so as to achieve fair and reasonable treatment between beneficiaries if "the trustee considers it necessary" and if three prerequisites are met.  G. L. c. 203D, § 4 (a).  First, the trustee must "invest[] and manage[] trust assets as a prudent investor."  Id.  Second, "the terms of the trust [must] describe the amount that may or must be distributed to a beneficiary by referring to the trust's income."  Id.
            Third, the trustee must determine, "after applying the rules in [§ 3 (a)], that the trustee is unable to comply with [§ 3 (b)]."  Id.  Section 3 (a), in turn, requires compliance with the trust instrument's terms and compliance with the act, absent a "different provision" in the instrument;[9] and § 3 (b) generally requires impartial administration of the trust so as to achieve fair and reasonable treatment of beneficiaries.[10]  G. L. c. 203D, § 3 (a), (b).  Thus, the third prerequisite is met if the trust does not contain a "different provision" barring exercise of the power to adjust, and the trustee determines he or she cannot administer the trust impartially absent an adjustment between principal and income.[11]
            Importantly, the MPIA identifies the type of "different provision" required to preclude a trustee from exercising the power to adjust under the act.  It provides that the
"[t]erms of a trust that limit the power of a trustee to make an adjustment between principal and income do not affect the application of [§ 4] unless it is clear from the terms of the trust that the terms are intended to deny the trustee the power of adjustment conferred by [§ 4 (a)]" (emphasis added).
G. L. c. 203D, § 4 (f).  The Uniform Law Commission's comments to the counterpart section of the Uniform Principal and Income Act, which is identical to § 4 (f) of the MPIA, explain:
"Since the power [to adjust] is intended to enable trustees to employ the prudent investor rule without being constrained by traditional principal and income rules, an instrument executed before the adoption of this Act whose terms describe the amount that may or must be distributed to a beneficiary by referring to the trust's income or that prohibit the invasion of principal or that prohibit equitable adjustments in general should not be construed as forbidding the use of the power to adjust under [§ 4 (a)] if the need for adjustment arises because the trustee is operating under the prudent investor rule."
Uniform Principal and Income Act § 104(f) comment, 7A U.L.A. (Part IV) 302-303.  Thus, the act authorizes a trustee to adjust trust assets between principal and income in order to administer the trust impartially, unless the trust instrument contains a "different provision" that clearly denies the trustee that power.  See G. L. c. 203D, §§ 3 (a) (3), 4 (a), (f); St. 2005, c. 129, § 6.
            iii.  Considerations in exercising power to adjust.  If the trust instrument does not contain the requisite "different provision," then a trustee has the power to adjust and must determine whether and how to exercise that power.  In doing so, the act requires a trustee to "consider all factors relevant to the trust and its beneficiaries."  G. L. c. 203D, § 4 (b).  The Legislature enumerated nine nonexclusive factors that may be relevant to a trustee's determination.[12]  Id.  A trustee's decision to adjust between income and principal, as well as the trustee's determination as to which factors are relevant to that decision and the weight to give those factors, is owed substantial deference; it may be disturbed only if the court finds the trustee abused his or her discretion.  G. L. c. 203D, § 5.  See Uniform Principal and Income Act § 104 comment, 7A U.L.A. (Part IV) 300, citing Restatement (Second) of Trusts §§ 183, 187, 232, 233, comment P (1959) ("The power to adjust is subject to control by the court to prevent an abuse of discretion").
            A trustee may not, however, adjust between principal and income in the circumstances described in § 4 (c).  Relevant to the present case, § 4 (c) prohibits a trustee from exercising the power to adjust where the trustee is a beneficiary of the trust.  See G. L. c. 203D, § 4 (c) (7).  Where this prohibition applies, and there is more than one trustee, "a cotrustee to whom [the prohibition] does not apply may make the adjustment [between principal and income] unless the exercise of the power [to adjust] by the remaining trustee . . . is not permitted by the terms of the trust."  G. L. c. 203D, § 4 (d).
            b.  Clear prohibition of the act's power to adjust.  As set forth supra, a trustee may exercise the power to adjust under § 4 (a) when three prerequisites are met.[13]  There is no dispute that the first two –- that the trustee is subject to the prudent investor rule[14] and that the trust instrument describes Levy's benefits in terms of income[15] -- are met.  The parties' dispute centers on the third condition -- whether the trustee's power to adjust is barred by a "different provision" of the will.
            Peter contends that the will expressly precluded the trustee from adjusting between principal and income.  See G. L. c. 203D, § 3 (a) (1) (trustee "shall administer a trust . . . in accordance with the terms of the . . . will, even if there is a different provision" in MPIA).  Specifically, Peter maintains that because the will limits the trustee's power to distribute the trusts' principal only where "necessary for any emergency affecting" Levy; because the will expressly sets forth Kline's intent that any such "principal distributions" to Levy would occur "only under the most extraordinary circumstances," which Kline did "not anticipate"; and because Levy was not experiencing such an emergency or extraordinary situation, the will expressly precluded the trustee from exercising the power to adjust.
            The provision of the will on which Peter relies does not discuss, much less clearly preclude, the power to adjust.  Instead, the provision addresses only distributions of principal; it is silent as to whether the trustee may adjust between principal and income.  See G. L. c. 203D, § 4 (a) ("A trustee may adjust between principal and income if . . . the terms of the trust describe the amount that may or must be distributed to a beneficiary by referring to the trust's income . . .").[16]  Thus, the will does not contain a "different provision" that clearly denies the trustee the power to adjust conferred by the act.  G. L. c. 203D, § 3 (a) (3).[17]
            c.  Exercise of discretion.  Having concluded that the will does not prohibit the power to adjust, we consider Peter's arguments that the trustee abused his discretion in exercising that power.
            Peter first argues that the trustee abused his discretion because, although the trustee averred that he considered the relevant factors under § 4 (b), he did not consider Kline's intent.  G. L. c. 203D, § 4 (b) (2).  Peter offers nothing to support this contention.  Instead, he repeats his mistaken argument relying on the provision of the trust regarding principal distributions to Levy for emergencies only.[18]  As set forth supra, that provision concerns distributions of principal and not adjustments between principal and income.  Thus, it says nothing about Kline's intent to prohibit adjustments.
            Second, Peter asserts that § 4 (c) (7) of the act, which prohibits adjustments between principal and income "if a trustee is a beneficiary of the trust," precludes the trustee from adjusting principal to income here.  Peter's argument ignores that § 4 (d) of the act permits the trustee, who is not a beneficiary, to make adjustments notwithstanding his cotrustee's status as both beneficiary and trustee.  See G. L. c. 203D, § 4 (d) ("If [§ 4 (c) (7)] applies to a trustee and there is more than one trustee, a cotrustee to whom the provision does not apply may make the adjustment unless the exercise of the power by the remaining trustee or trustees is not permitted by the terms of the trust").  Similarly, although the will bars a trustee "who is also a beneficiary [from] participat[ing] in any decision relating to any discretionary distributions of income or principal," it neither restricts the other trustee from acting nor prohibits Levy from asking the trustee for distributions.[19]
Judgment affirmed.
 
footnotes

 
            [1] Article Fourth, par. D, of the will provides, in relevant part:  "My Trustees shall distribute to each daughter all of the net income of her trust in convenient periodic installments."
            [2] Because the petitioner and other beneficiaries share a surname, we will refer to the petitioner by his first name.
            [3] Article Fourth provides that, upon Levy's death, the balance of the trusts' principal and any undistributed income is to be divided into even shares equal to the number of Levy's then-living children or deceased children who have then-living issue.
            [4] Stephen and William Judson did not join the petition and have not participated in this case.
            [5] The trustee believed he was authorized to make this adjustment under § 4 of the MPIA, discussed infra.
            [6] The prudent investor rule, a creature of the common law now codified in the Massachusetts Prudent Investor Act, G. L. c. 203C, §§ 1-11, inserted by St. 1998, c. 398, § 1, generally demands that a trustee "shall invest and manage trust assets as a prudent investor would, considering the purposes, terms, and other circumstances of the trust" and must "exercise reasonable care, skill, and caution," G. L. c. 203C, § 3 (a).
            7 See G. L. c. 203C, § 7 ("If a trust has two or more beneficiaries, the trustee shall act impartially in investing and managing the trust assets, taking into account any differing interests of the beneficiaries").
            8 Although secondary sources are not binding in our construction of a statute, they can be informative.  The drafters' comments to the MPIA -- and so far as the MPIA substantially mirrors its language, comments to the uniform act -- are particularly useful in understanding the objectives the Legislature sought to achieve in adopting the act.  See Klingel v. Reill, 446 Mass. 80, 84 (2006) ("When the Legislature adopted the language of [a uniform act], it intended an interpretation of that term consistent with the rationale explained in the comment accompanying that language").
            9 Pertinent here, § 3 (a) of the act provides that in determining whether to adjust trust assets between principal and income, a trustee "(1) shall administer a trust . . . in accordance with the terms of the trust or the will," even if the MPIA sets forth a different default rule; and "(3) shall administer a trust . . . in accordance with [the MPIA] if the terms of the trust or the will do not contain a different provision."  G. L. c. 203D, § 3 (a).  In other words, subsections 3 (a) (1) and (3) require a trustee to comply with the express terms of the trust instrument regarding the adjustment of principal and income, if there are any such terms, and also to comply with the act's rules for adjustment of principal and income, unless the trust instrument sets forth a "different provision" that expressly provides a different rule.  Id.
            10 Section 3 (b) requires a trustee to administer the trust impartially so as to treat beneficiaries fairly and reasonably "except to the extent that the terms of the trust or the will clearly manifest an intention that the [trustee] shall or may favor 1 or more of the beneficiaries."  G. L. c. 203D, § 3 (b).
            11 The power to adjust set forth in the act
"authorizes the trustee to make adjustments between principal and income that may be necessary if the income component of a portfolio's total return is too small or too large because of investment decisions made by the trustee under the prudent investor rule.  The paramount consideration in applying [the power to adjust] is the requirement in [§ 3 (b)] that 'a fiduciary must administer a trust . . . impartially, based on what is fair and reasonable to all of the beneficiaries,'"
except where the trust instrument "clearly manifest[s] an intention" to favor a particular beneficiary.  Uniform Principal and Income Act § 104 comment, 7A U.L.A. (Part IV) 300.
            12 Specifically, § 4 (b) sets forth the following factors that a trustee must consider "to the extent they are relevant": 
"(1) the nature, purpose and expected duration of the trust; (2) the intent of the settlor; (3) the identity and circumstances of the beneficiaries; (4) the needs for liquidity, regularity of income and preservation and appreciation of capital; (5) the nature and character of the assets held in the trust, if an asset is used by a beneficiary, and whether an asset was purchased by the trustee or received from the settlor; (6) the net amount allocated to income under the other sections of this chapter and the increase or decrease in the value of the principal assets, which the trustee may estimate as to assets for which market values are not readily available; (7) whether the terms of the trust give the trustee the power to invade principal or accumulate income or prohibit the trustee from invading principal or accumulating income, and if the trustee has exercised a power from time to time to invade principal or accumulate income; (8) the actual and anticipated effect of economic conditions on principal and income and effects of inflation and deflation; and (9) the anticipated tax consequences of an adjustment."
G. L. c. 203D, § 4 (b).
            13 The MPIA applies to the trusts at issue.  See St. 2005, c. 129, § 6 ("[The MPIA] shall apply to a trust or a decedent's estate existing on [January 1, 2006,] except as otherwise expressly provided in the will or terms of the trust or in this act").
            14 See G. L. c. 203C, § 2 (a) ("a trustee who invests and manages trust assets shall owe a duty to the beneficiaries of the trust to comply with the prudent investor rule").
            15 The trust document instructs "[m]y [t]rustees shall distribute to [Levy] all of the net income of her trust in convenient periodic installments."
            16 The will distinguishes between the authority of the trustees to make "distributions" and the trustee's power to make "adjustments."  Compare Article Fourth (setting forth limitations on "principal distributions" to Levy) with Article Seventh (discussing power of trustee to make "adjustments" between principal and income for tax purposes).
            17 We do not address § 3 (a) (2) of the act, which provides that a trustee "may administer a trust . . . by the exercise of a discretionary power of administration given to the [trustee] by the terms of the trust or the will, even if the exercise of that power produces a result different from a result required or permitted by" the MPIA, as none of the parties asserts that it controls their dispute.  G. L. c. 203D, § 3 (a) (2).
            18 Peter's reliance on "Example (4)" to Uniform Principal and Income Act § 104, 7A U.L.A. (Part IV) 303-304, is likewise unavailing.  The example concerns a situation involving an income beneficiary whose distributions from principal are limited to "dire emergencies only" and by an absolute lifetime cap of six percent of the trust's value.  The comment concludes that the hypothetical trustee may adjust principal to income after an adjusted investment strategy that disproportionately favored the remainder beneficiaries "to the extent" the adjustment "is from only the capital appreciation" resulting from the new investment strategy.  Unlike the situation posited in the example, here the will places no absolute cap on distributions and Peter adduced no evidence to support a reasonable finding that the adjustments by the trustee in this case were not from capital appreciation due to the pursued investment strategy.  Nor has Peter requested additional discovery under Mass. R. Civ. P. 56.
            19 Article Ninth of the will sets forth Kline's intention that there be two trustees "acting . . . at all times"; where a trustee is also a beneficiary (beneficiary trustee), the will provides that the beneficiary trustee "shall not participate in any decision relating to any discretionary distributions of income or principal."